**BOGGS, Appellee,**

v.

**BOGGS, Appellant.**

[Cite as *Boggs v. Boggs* (1997), 118 Ohio App.3d 293.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 1996CA00122.

Decided March 3, 1997.

*Mitchell A. Machan,* for appellee.

*Richard A. Myers, Jr.,* for appellant.

WILLIAM B. HOFFMAN, Judge.

Defendant-appellant Roy F. Boggs, Jr. appeals the entry of the Court of Common Pleas of Stark County, Domestic Relations Division, holding him in contempt and ordering him to pay child support and spousal support to plaintiff-appellee Beatrice G. Boggs.

## STATEMENT OF THE FACTS AND CASE

The parties were married on April 18, 1980. Two children were born of this marriage: Sarah R. Boggs (born May 1, 1985) and Deborah L. Boggs (born February 8, 1988).

Appellee is thirty-nine years old and a high school graduate. The record reflects she has had a number of jobs for short periods of time, some of which were terminated voluntarily and others nonvoluntarily. Appellee testified that she has been unable to gain and maintain stable employment due to lack of child care, lack of transportation, and a persistent back injury.

Appellant is thirty-eight years old. His educational background includes a G.E.D. and a year of college. He was employed at Republic Engineered Steel for six years and received an annual salary of $38,000 during his final year of employment there. In November 1994, during the pendency of the instant divorce action, appellant quit his position at Republic Engineered Steel and accepted employment at Bliss & Laughlin in Medina, Ohio, for an annual salary of $23,250. Appellant explained that he changed positions because he felt it would be beneficial for his health in light of the allegedly poor working conditions at Republic Engineered Steel.

On March 1, 1994, appellee filed a complaint for divorce in the Court of Common Pleas of Stark County, Domestic Relations Division. Via entry filed May 2, 1994, the referee issued a report, naming appellee temporary legal custodian of the two minor children and ordering appellant to pay temporary child support and spousal support and have "no visitation in the presence of non-relative adults of the opposite sex" ("no-contact order"). The report was adopted by the trial court via entry filed June 29, 1994.

On August 12, 1994, appellee filed a motion to hold appellant in contempt for violating the court's no-contact order. On August 31, 1994, appellant filed a motion to dissolve the no-contact order and a motion to hold appellee in contempt for failing to "engage in a good faith effort to either seek or retain gainful employment." The matter came on for hearing before a referee on September 22, 1994.

Via report filed October 17, 1994, the referee recommended that appellant's motions to dissolve and to hold appellee in contempt be denied and that appellee's motion to hold appellant in contempt for failing to honor the no-contact order be granted. Appellant filed objections to the report on November 9, 1994. Due to various scheduling delays, appellant's objections did not come on for hearing until May 15, 1996. Via judgment entry filed July 1, 1996, the trial court overruled appellant's objections, noting that appellant failed to provide the court with a transcript of the September 22, 1994 hearing before the referee.

In the interim, on December 20, 1994, appellee filed a second motion to hold appellant in contempt for violating the no-contact order. The motion was heard before a referee at the trial on the divorce complaint on May 24, 1995 and August 30, 1995. Via report filed October 2, 1995, the referee recommended that appellant be held in contempt for both violating the no-contact order and failing to pay child and spousal support. Over appellant's objection, the trial court approved the referee's findings and recommendations via entry filed March 27, 1996. Appellant was thereafter sentenced to sixty days in the Stark County Jail, fifty days of which were suspended on the condition that appellant pay some amount each month on the existing support arrearages. The court further sentenced appellant to serve the remaining ten days in the Stark County Jail as a form of "punitive sanctions."

It is from this entry that appellant now appeals, raising the following three assignments of error:

"I. The trial court erred as a matter of law and abused its discretion to the prejudice of appellant when it made the finding of contempt against the appellant on the issues of contact with a nonrelative third party of the opposite sex and the failure to provide any purge mechanism for any finding of contempt.

"II. The trial court erred [and] abused its discretion to the prejudice of appellant when it failed to modify the child support and spousal support orders to reflect his income.

"III. The trial court erred [and] abused its discretion to the prejudice of appellant when it failed to find the appellee in contempt of the pretrial order ordering her to seek employment."

## I

In his first assignment of error, appellant argues that the trial court erred in holding him in contempt for violating the court's no-contact order. Specifically, appellant maintains that he should not have been held in contempt because the no-contact order at issue was unconstitutionally overbroad and denied him his right to freedom of association.

■ As an initial matter, we note that there are two contempt findings at issue herein, *i.e.*, the contempt finding contained in the referee's October 17, 1994 report relative to appellee's August 12, 1994 motion in contempt, and the contempt finding contained in the referee's October 2, 1995 report relative to appellee's December 20, 1994 motion in contempt. The record reflects that appellant first raised the argument presented herein relative to the constitutionality of the no-contact order in his October 13, 1995 objections to the referee's *second* contempt finding on October 2, 1995. Because appellant failed to specifically raise the objection argued herein at any time prior to the court's *first* contempt finding, we find that appellant has waived the arguments presented herein relative to that *first* contempt finding. Accordingly, we will not consider the arguments raised in appellant's first assignment of error relative to the court's first contempt finding on October 17, 1994, but will address his arguments relative to the second contempt finding.

That clarified, we now proceed to address the merits of appellant's argument on appeal. R.C. 2705.02 provides:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a *lawful* writ, process, order, rule, judgment, or command of a court or an officer. * * *" (Emphasis added.)

■ In the instant case, the court issued a temporary order that appellant have "no visitation in the presence of non-relative adults of the opposite sex." Appellant maintains that the trial court erred in holding him in contempt for violating this order because this order deprived him of his constitutional right of freedom of association and was, therefore, unlawful.

 It is well established that, where a state action infringes upon a fundamental right, the action becomes the subject of strict judicial scrutiny and will be upheld only upon a showing that it is justified by a compelling state interest and is the least restrictive alternative necessary to effectuate that interest. See, generally, *Eisenstadt v. Baird* (1972), 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349; *Zablocki v.. Redhail* (1978), 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618; *Cincinnati Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 12 O.O.3d 327, 390 N.E.2d 813. In that we believe appellant's right of freedom of association is a fundamental right that has been infringed by the broad character of the no-contact order at issue herein, we will apply strict judicial scrutiny in our analysis of the constitutionality of said order.

Under the first tier of the strict judicial scrutiny analysis noted above, it must first be demonstrated that the no-contact order at issue herein is justified by a compelling state interest. In its March 27, 1996 judgment entry, the trial court noted that the no-contact order was imposed in order to protect the best interests of the parties' minor children by preventing their exposure to adulterous situations. We believe that the court's interest in protecting the minor childrens' best interests constitutes a compelling state interest sufficient to satisfy the first tier of the strict scrutiny test.

However, it must further be demonstrated that the order is the least restrictive alternative to accomplishing that interest. In its March 27, 1996 judgment entry, the court further indicated that the no-contact order was by necessity broadly drafted in light of the myriad possibilities of multiple adulterous relationships and the evidentiary problems associated with establishing the existence or nonexistence of said relationships. In light of the nature of the instant action and the concerns raised by the trial court in its entry, we agree that the no-contact order, although broad, is the least restrictive alternative to accomplishing the court's interest in protecting the best interest of the minor children herein.

 Accordingly, we find appellant's argument that the trial court erred in holding him in contempt of the order because the order was unlawful under R.C. 2705.02 is without merit.[1]

 Appellant further argues that the trial court erred when it failed to provide a purge mechanism for its finding of contempt relative to appellant's failure to abide by the court's child support and no-contact orders.

---

1. Appellant offers several hypothetical situations that would appear to facially violate a strict interpretation of the no-contact order but where enforcement of the no-contact order would be "constitutionally repugnant." Should a finding of contempt be based on such a hypothetical situation as proffered by the appellant, such finding might well be subject to attack as being unconstitutional as applied.

In *Brown v. Executive 200* (1980), 64 Ohio St.2d 250, 253–254, 18 O.O.3d 446, 448–449, 416 N.E.2d 610, 613, the Ohio Supreme Court discussed the distinction between civil and criminal contempt as follows:

"While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the consent judgment decree or was it to punish them for past violations?" (Citations omitted.)

In the instant case, the record reflects that the trial court sentenced appellant to sixty days in the Stark County Jail but suspended fifty of the days on the condition that appellant pay monthly on arrearages in his child and spousal support obligations. The court further sentenced appellant to serve the remaining ten days in the Stark County Jail as "punitive sanctions," noting that "there is no way to purge the contempt of exposing the children to [appellant's] paramour."

We believe that the trial court's order contains findings of both civil and criminal contempt. With regard to appellant's failure to abide by the court's child and spousal support orders, we believe the court found appellant in civil contempt and provided a purge mechanism, *i.e.*, the suspension of fifty days of jail time on the condition that he pay monthly on his support arrearages. With regard to appellant's failure to abide by the court's no-contact order, we believe that the court found appellant in criminal contempt for his "repeated and blatant" exposure of the children to his paramour. Because, as the court noted, there is no way to purge past violations of said order, we believe that the court did not err in failing to provide a purge mechanism for that aspect of the finding of contempt. For a similar result, see *State v. Christon* (1990), 68 Ohio App.3d 471, 589 N.E.2d 53. Accordingly, this argument in support of appellant's first assignment of error is without merit.

Appellant's first assignment of error is overruled.

## II

In his second assignment of error, appellant argues that the trial court erred in failing to modify its child support and spousal support orders to reflect

appellant's income. Specifically, appellant maintains that the trial court erred in finding that he voluntarily underemployed himself when he changed positions from Republic Engineered Steel to Bliss & Laughlin.

R.C. 3113.215(A)(1)(b) defines "income" as "[f]or a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent." "Potential income" is then defined in R.C. 3113.215(A)(5)(a) as follows:

"(5) 'Potential income' means both of the following for a parent that the court * * * determines is voluntarily unemployed or voluntarily underemployed:

"(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]"

In the instant case, the record reflects that appellant worked at Republic Engineered Steel for an annual salary of $40,051 in 1992 and $38,166 in 1993. In November 1994, during the pendency of the instant action, appellant voluntarily left Republic Engineered Steel and accepted a position at Bliss & Laughlin for an annual salary of $23,250, with no retirement or vacation benefits. Although appellant testified that his decision to leave Republic Engineered Steel was based on health concerns, the trial court, as the trier of fact, was entitled to find that testimony lacking in credibility and to conclude that appellant changed positions in order to avoid his court-ordered support obligations. Accordingly, we find that there was evidence to support the trial court's finding of voluntary underemployment and believe that the trial court did not err in refusing to modify its support orders as requested by appellant.

Appellant's second assignment of error is overruled.

### III

In his third and final assignment of error, appellant argues that the trial court erred in failing to find appellee in contempt for failing to seek employment as ordered by the court.

The record reflects that appellant filed his contempt motion against appellee on August 30, 1994. This motion came on for hearing before the referee on September 22, 1994. Via report filed October 17, 1994, the referee recommended that appellant be held in contempt but did not recommend that appellee be held in contempt as argued by appellant. Appellant filed objections to the report on November 8, 1994. Due to various scheduling delays, appellant's objections relative to the referee's failure to hold appellee in contempt were not set for

hearing until May 15, 1996. Via entry filed July 1, 1996, the trial court overruled appellant's objections, noting that appellant failed to provide the court with a transcript of the September 22, 1994 hearing before the referee. The record further reflects that appellant has also failed to provide this court with the transcript of the September 22, 1994 hearing.

Civ.R. 53(E)(3)(b) provides:

"(3) *Objections.*

"\* \* \*

"(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection. \* \* \* *Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.*" (Emphasis added.)

In light of appellant's failure to provide the trial court with a transcript of the September 22, 1994 hearing, the trial court did not err in accepting and adopting the findings of fact contained in the referee's report dated October 17, 1994, including the referee's findings relative to appellee's alleged failure to seek gainful employment. See July 1, 1996 judgment entry. Having failed to comply with the rule, the appellant is barred from assigning as error on appeal the trial court's adoption of the finding and the conclusion of law that results from the finding.

Appellant's third assignment of error is overruled.

For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Domestic Relations Division, is affirmed.

*Judgment affirmed.*

GWIN, P.J., and FARMER, J., concur.