While I agree with Part IV of the majority decision, I respectfully dissent from the remainder of the decision for the simple reason that the conclusions rendered by the majority are contrary to law and the notion of "substantial justice". The majority erred in finding: (1) this court's review of the character and purpose of contempt sanctions is limited by the label (either "civil" or "criminal") affixed to the sanction by the parties and Judge Jose Villanueva; and (2) the sanctions are "civil" in nature, rather than "criminal," because they are "remedial" in character and "coercive" in purpose. Moreover, because I conclude that the sanctions imposed are criminal in nature, Tradesmen's attorney should not have prosecuted the action and, as a result, could not recover attorney fees.
The underlying difficulty with this case is Tradesmen's failure to properly draft the contractual remedies available upon a party's violation of the settlement agreement. It waived monetary damages not just in the original non-competition agreement, it waived them a second time in the consent judgment. In addition to waiving damages, Tradesmen also failed to provide for any other remedy upon Kahoe's or Cherotti's violation of the agreed injunction. "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation[;] * * * such agreements are valid and enforceable by either party."Continental W. Condominium Unit Owners Assn. v. Howard E.Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431. While Tradesmen should have sought to enforce the consent judgment by filing a motion to enforce judgment, id., there nothing to "enforce" in the present case because the terms of the agreed injunction had almost expired. The appropriate remedy for Tradesmen's self-induced problem, however, should not be saddled upon the judiciary. The mere fact that a contractual agreement in a case such as this becomes an order of the court should not, in and of itself, be the foundation for contempt proceedings upon violation of the agreement.[1] The reason is simple: a violation of a simple consent judgment authorized by the court inflicts a primary injury upon the party; any injury to the court is secondary. The effect of the decision today essentially allows any party, regardless of whether he or she negotiates a bad civil consent judgment, to seek indirect contempt sanctions, either civil or criminal, for any noncompliance with that consent judgment.
 Appellate Review
In any event, as the authority of Ohio and federal courts make clear, it is incumbent upon a reviewing court to independently review the character and purpose of the imposed contempt sanction. Contex, Inc. v. Consolidated Technologies, Inc. (1988),40 Ohio App.3d 94, 95, 531 N.E.2d 1353; International Union,United Mine Workers v. Bagwell (1994), 512 U.S. 821, 838,114 S.Ct. 2552, 2564-2565, 129 L.Ed.2d 642; Hicks on Behalf ofFeiock v. Feiock (1988), 485 U.S. 624, 630, 108 S.Ct. 1423, 1429,99 L.Ed.2d 721; Latrobe Steel Co. v. United Steelworkers ofAmerica (C.A.3, 1976), 545 F.2d 1336, 1342 n. 26. Despite rules delineating "civil" contempt sanctions from "criminal" contempt sanctions, the lines which separate the two may blend and blur.[2] Because of this difficulty, independent review is required because "[t]he most important consequences arising from this classification of contempt [as either civil or criminal] is that many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings." Kilbane, 51 Ohio St.2d at 205.[3] Indeed, a judge's "contempt power * * * uniquely is `liable to abuse.'"Bagwell, 512 U.S. at 831, 114 S.Ct. at 2559, quoting Bloom v.Illinois (1968), 391 U.S. 194, 202, 88 S.Ct. 1477, 1482,20 L.Ed.2d 522, quoting Ex parte Terry, 128 U.S. 289, 313,9 S.Ct. 77, 82-83, 32 L.Ed. 405 (1888).
 Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct. Contumacy "often strikes at the most vulnerable and human qualities of a judge's temperament," Bloom, 391 U.S., at 202, 88 S.Ct., at 1482, and its fusion of legislative, executive, and judicial powers "summons forth * * * the prospect of `the most tyrannical licentiousness,'" Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 822, 107 S.Ct. 2124, 2145, 95 L.Ed.2d 740 (1987) (SCALIA, J., concurring in judgment), quoting Anderson [v. Dunn], 6 Wheat. [204], at 228, [5 L.Ed. 242 (1821)]. [Bagwell, 512 U.S. at 831-832, 114 S.Ct. at 2559.]
Given this potential, the reason a reviewing court must conduct an independent review is obvious: if appellate review is limited to a trial judge's characterization of a sanction as "civil," when in fact and law it is "criminal," then the application of the protections afforded to the citizenry by the federal and state constitutions are left entirely to the discretion of the trial judge. Cf. Hicks, 485 U.S. at 630 (trial judge's conclusion that both the contempt proceeding and subsequent relief were "quasi-criminal" under California law was not determinative of federal constitutional due process protections despite the trial judge's determination otherwise). Therefore, to ensure that "substantial justice" be done, appellate review of the character and purpose of a contempt sanction must be conducted independent and regardless of the trial judge's purported classification. This court should not turn a blind eye under the guise of "waiver" when a trial judge and a defendant's counsel fail to recognize a criminal contemnor's fundamental constitutional and statutory rights, especially under the present circumstances where the contemnor's trial and appellate lawyers are the same. See Crim.R. 56(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); Olmsted Twp. v. Sarli (Apr. 16, 1998), Cuyahoga App. No. 73226, unreported (court committed plain error when requiring defendant to prove affirmative defense beyond a reasonable doubt rather than by a preponderance of the evidence as provided under R.C. 2901.05[A]).
 Distinguishing Criminal and Civil Contempt Sanctions
When independently considering the sanctions imposed here in the context of case law, it is clear that the sanctions are criminal in nature because the character of the sanctions served to punish for the "completed act of disobedience" of violating the consent judgment and the purpose of the sanctions served "to vindicate the authority of the law and the court." Brown v.Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253, 254,416 N.E.2d 610; accord Denovchek v. Bd. of Trumbull Cty. Commrs
(1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362. These sanctions cannot be considered civil in nature because the character of a civil contempt sanction is remedial, and its purpose is to coerce the contemnor into future compliance with a court order; the sanction is rendered for the benefit of the complainant. Brown,supra; State v. Kilbane (1980), 61 Ohio St.2d 201, 205,400 N.E.2d 386; Bd. of Edn. v. Brunswich Edn. Assn.
(1980), 61 Ohio St.2d 290, 294, 401 N.E.2d 440.
While I acknowledge that a criminal contempt sanction is usually characterized by an unconditional prison sentence,[4]Brown, 64 Ohio St.2d at 254, it may take other forms such as an unconditional fine, Bagwell, 512 U.S. at 829, 114 S.Ct. at 2558;Downey v. Clauder (C.A.6 1994), 30 F.3d 681, 685. Therefore, criminal contempt sanctions require proof of guilt beyond a reasonable doubt. Brown, supra at syllabus.[5] The distinguishing factor, however, between the two contempts is that the criminal contempt sanction lacks a coercive element; rather, it serves merely to punish for a past refusal to obey an order of the court. Elias v. Stein (1997), 120 Ohio App.3d 432, 434,698 N.E.2d 74.
With regard to the first sanction, the majority contends that "extending the terms of the noncompetition agreements for an additional six month period is a classic example of [a] civil contempt sanction serving to coerce the defendant into compliance with the court's order," and they conclude that the sanction is remedial because it "restored the status quo between the parties" (Decision at 4-6 [emphasis added]). However, because the terms of the consent decree expired or were about to expire, logic dictates that there was nothing to comply with. Because this sanction essentially rewrites the terms of the parties' original consent judgment entry rather than enforces it, this first sanction serves both to punish Kahoe and Cherotti for their alleged violation of the consent judgment entry and to vindicate the authority of the court.
I acknowledge, however, that the prospective nature of the sanction, an additional six-month period of semi-competition-free business, appears to benefit Tradesmen — a trait which would signify a civil contempt remedy — and "restores the status quo" as the majority contends. This, however, is illusory.
Tradesmen apparently sought to extend the terms of the consent judgment solely because it had agreed that any injury due to a breach of the terms of the Confidentiality and Non-competition Agreements (later incorporated into the consent judgment and settlement agreement) would "not be susceptible to monetary evaluation." Therefore, it waived recovery for any monetary damages it may have incurred as a result of defendants' breach of the non-competition agreements and subsequent breach of the consent judgment. Tradesmen's intent in seeking an extension of the clause and restraining Kahoe's and Cherotti's business dealings as an alternative means of compensation is not dispositive of the character and purpose of the sanction. SeeConTex, 40 Ohio App.3d at 95. Such a sanction, also, does not return the parties to the "status quo" because Kahoe's and Cherotti's alleged wrongful actions cannot be "undone." As such, the sanction here is not coercive and, therefore, it is not civil in nature for three reasons: (1) it does not compel compliance with the original consent judgment; (2) it is not conditional; and (3) it does not allow Kahoe or Cherotti an opportunity to remedy their alleged contempt. Brown, 64 Ohio St.2d at 253-255; see Kilbane, 61 Ohio St.2d at 206. Kahoe and Cherotti lack any power whatsoever to purge themselves of the contempt: "`[T]he defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense.'" Bagwell, 512 U.S. at 829,114 S.Ct at 2558, quoting Gompers v. Bucks Stove Range Co
(1911), 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed 797. The prospective nature and incidentally remedial quality of the sanction is, at most, secondary to the overriding purpose of the sanction, i.e., to punish and to vindicate. Because the overriding purpose of the sanction is to punish, this sanction denotes indirect criminal contempt and, before imposition of such a sanction, requires proof beyond a reasonable doubt. Brown, 64 Ohio St. 2d at syllabus.
The judge also ordered Kahoe and Cherotti to sever any current formal and informal business relationship with each other, including those with a potential conflict with Tradesmen; he also restrained these defendants from entering into any contractual relationship with each other or their intermediaries to manage, operate, or administer such business during the six-month period. These sanctions appear, at first blush, to be coercive in nature because they require future compliance with an order of the court. A sanction ensuring future compliance would denote indirect civil contempt. However, the future compliance these sanctions require is with the second extension of the non-competition clause, the first sanction, rather than the original consent judgment entry. As such, they serve to further the purpose of punishment. In addition, a violation of one of these sanctions would necessarily result in a violation of the extension of the non-competition clause. Therefore, these sanctions also denote indirect criminal contempt.
Because the sanctions imposed are criminal contempt sanctions, I would remand this action for further hearing and application of the proper burden of proof.
 Attorney Fees
Kahoe and Cherotti have also taken issue with the award of attorney fees. Because I conclude that the contempt sanctions are criminal, rather than civil, I do not believe that Tradesmen is entitled to attorney fees.
It is a well-settled rule that, absent explicit statutory authority or a showing that "the losing party has acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons," attorney fees are not recoverable as part of the costs of an action. Sorin v. Board of Ed. of Warrensville Hts. Sch.Dist. (1976) 46 Ohio St.2d 177, 181; accord State ex rel.Pennington v. Gundler (1996), 75 Ohio St.3d 171, 173. The Supreme Court of Ohio carved out an exception to this rule when it held that "[a] trial court has discretion to include reasonable attorney fees as part of costs taxable to a defendant found guilty of civil contempt." State ex rel. Fraternal Order ofPolice v. Dayton (1977), 49 Ohio St.2d 219, syllabus. There is no authority for the allowance of an award of attorney fees in an action where the complainant sought sanctions for indirect criminal contempt other than those situations where authorized in conjunction with statute. E.g., R.C. 3109.05 (C); cf. ClevelandPolice Credit Union v. Crosby (July 30, 1992), Cuyahoga App. No. 60781, unreported, 1992 WL 181680 (indirect criminal contempt judgment included statutory fine and attorney fees for frivolous conduct pursuant to R.C. 2323.51).
It is doubtful that attorney fees are available in matters involving purely criminal contempt sanctions. The reason is simple: "proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." Gompers, 221 U.S. at 445; R.C. 2705.03 (in matters of indirect contempt, "a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard * * *"). Such proceedings are ordinarily handled by the prosecuting attorney's office. See Gompers, 221 U.S. at 445 (criminal contempt "proceeding with the court, or more properly the government, on one side and the defendants on the other"). Moreover, the prosecution of a purely criminal contempt matter by an interested party is improper:
 Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor. That state official has the power to employ the full machinery of the state in scrutinizing any given individual. Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice. A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters.
Young v. U.S. ex rel. Vuitton et Fils S.A. (1987), 481 U.S. 787,814, 107 S.Ct. 2124, 2141, 95 L.Ed.2d 740;[6] cf. R.C. 2733.07
(allows court to appoint attorney of its choice to prosecute an action on behalf of the state when the prosecuting attorney is absent, interested in the action in quo warranto or disabled); R.C. 2941.63 (court may appoint attorney, who shall be paid by county commissioners, to assist prosecuting attorney when "the public interest requires it"); State v. Britton (June 23, 1999), Marion App. No. 9-98-39, unreported, 1999 WL 446588 (hearing on motion for post-conviction relief required to determine whether prosecuting attorney should be disqualified where he had previously represented the defendant on direct appeal of the case), applying Kala v. Aluminum Smelting Refining Co. (1998),81 Ohio St.3d 1, 13, 688 N.E.2d 258.
Tradesmen has argued that it is entitled to its attorney fees through the consent judgment and incorporated non-competition contracts. However, Tradesmen chose not to enforce the judgment. As noted above, due to its poorly drafted settlement agreement, it was left without monetary compensation for the alleged violation and, as a result, was left with little of the settlement agreement to enforce. Rather, Tradesmen sought to punish Kahoe and Cherotti by pursuing an action in criminal contempt. Therefore, because Tradesmen did not assert its rights under the consent judgment, it is not entitled to attorney fees in accordance with its terms.
Based upon the foregoing, I respectfully dissent from parts I, II and III of the majority opinion, and concur with part IV.
[1] The present action involves the violation of an ordinary contractual agreement. Cf. Young v. U.S. ex rel. Vuitton et FillsS.A. (1987), 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740
(criminal contempt for violation of consent judgment and agreed permanent injunction settling Vuitton's trademark infringement law claims).
[2] State v. Kilbane (1980), 61 Ohio St.2d 201, 204-205,400 N.E.2d 386; see Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250,253, 416 N.E.2d 610 (Contempt proceedings are suigeneris because "[t]hey are neither wholly civil nor wholly criminal actions."); Boggs V. Boggs (1997), 118 Ohio App.3d 293,299, 692 N.E.2d 674 (sanctions for contemptuous act were both civil and criminal in nature).
[3] In U.S. v. Dixon (1993), 509 U.S. 688, 696, 113 S.Ct. 2849,2856, 125 L.Ed.2d 556, the U.S. Supreme Court noted:
 [C]onstitutional protections for criminal defendants other than the double jeopardy provision apply in nonsummary criminal contempt prosecutions just as they do in other criminal prosecutions. See, e.g., Gompers v. Bucks Stove Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911) (presumption of innocence, proof beyond a reasonable doubt, and guarantee against self-incrimination); Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925) (notice of charges, assistance of counsel, and right to present a defense); In re Oliver, 333 U.S. 257, 278, 68 S.Ct. 499, 510, 92 L.Ed. 682 (1948) (public trial). We think it obvious, and today hold, that the protection of the Double Jeopardy Clause likewise attaches. Accord, Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195
(1975) (per curiam); Colombo v. New York, 405 U.S. 9, 92 S.Ct. 756, 30 L.Ed.2d 762 (1972) (per curiam).
See Garfield Hts. v. Stefaniuk (1998), 127 Ohio App.3d 293, 297,712 N.E.2d 808 (person subject to a criminal contempt proceeding has constitutional right to counsel, and statutory and constitutional right to notice); Bagwell 512 U.S. 821, 837-838,114 S.Ct. at 2562 (a contemnor given unconditional fine has right to a criminal jury trial).
[4] A conditional jail sentence may be considered a civil sanction, as it allows the contemnor to purge himself of the contempt. Brown, 64 Ohio St.2d at 253-255; see Kilbane,61 Ohio St. 2d at 206 ("We, however, reject an approach that labels any conditional contempt — as civil."). A court may also award damages, upon proper proof, or fines to compensate the complainant for losses sustained as a result of the contemptuous act. United Mine Workers, 330 U.S. at 303-304; Brown,64 Ohio St. 2d at 254.
[5] In addition, intent to violate a court order is an essential element of indirect criminal contempt. Midland SteelProds. Co. v. U.A.W. Local 486 (1991), 61 Ohio St.3d 121, 127,573 N.E.2d 98; Elias, 120 Ohio App.3d at 434.
[6] See Young, 481 U.S. at 814, 107 S.Ct. 2141 (harmless-error analysis is inappropriate in reviewing the appointment of an interested prosecutor).