DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division. The trial court found defendant-appellant, John Ortmann, in contempt of court, denied his motion for modification of spousal support, and ordered him to pay appellee's attorney fees.
Plaintiff-appellee, Anna B. Ortmann, and appellant were divorced in 1987. In accordance with an agreement entered into by the parties, the court ordered appellant to pay appellee spousal support in the amount of $900 per month, payable on the fifteenth and thirtieth of each month, commencing on April 15, 1987, by means of wage withholding. The spousal support was paid to appellee through the Lucas County Child Support Enforcement Agency. Pursuant to the court's order, the spousal support continues until appellee's death or remarriage, or the death of the appellant, or until further order of the court, or upon a substantial change in the financial circumstances of the parties, e.g., appellant's retirement.
On April 27, 1999, appellee filed a motion to show cause and for attorney fees and court costs. She asserted that appellant had not made spousal support payments since February 1999. She asked the court to find appellant in contempt, for a lump sum judgment in the amount of $1,800 and for reasonable attorney fees and court costs.
On November 1, 1999, appellant filed a motion to modify his spousal support obligation to seventy percent of the original amount. He claimed that he now had a "total permanent disability resulting in a significant and involuntary decrease in his annual income." Appellant further maintained that his monthly expenses had increased by $1,774 since the court's order. He asserted that as of June 3, 2001, his only income would be social security payments which were currently in the amount of $1,202 per month. Appellant therefore asked the trial court to "obliterate" his arrearage and to terminate the award of spousal support.
At the hearing before a magistrate on both motions, the evidence revealed that appellant started receiving long term disability benefits from his employer, Dana Corporation ("Dana"), in June 1996. Appellant acknowledged that he was aware of the fact that under the terms of Dana's employer/employee handbook, he was required to notify his employer when, if ever, he received any social security disability benefits. The amount of benefits paid by Dana would then be reduced by the amount of the social security disability benefits.
In June 1996, appellant began receiving social security disability benefits from the federal government. Even though he claimed that he "orally" notified Dana of this fact, appellant retained the full amount of benefits received from both Dana and the disability benefits provided under the Social Security Act. The amount of the overpayments was $410 per month.
In 1999, appellant, who was then sixty-five, inquired about his retirement benefits. Apparently, as a result of this inquiry, Dana learned of the social security disability payments. Because of the overpayments for the previous years, Dana stopped all payment of disability benefits to appellant as of February 1999. Consequently, appellee did not receive her ordered spousal support.
Dana demanded repayment of the entire sum owed due to the overpayments. Appellant declined to do so. Instead, he attempted to negotiate monthly payments from his disability benefits. It is undisputed that, at this time, appellant had $176,000 in a 401(k) and $12,000 in an IRA and was eligible to withdraw funds from these accounts during the relevant time period. In fact, appellant withdrew several thousand dollars from the 401(k) to pay expenses incurred as the result of the stoppage of his disability benefits. Appellant also was entitled to a pension from Dana valued at $271,000.
In August 1999, Dana agreed to resume payment of appellee's spousal support and to deduct $606.41 from appellant's Dana benefits for overpayments. At that point, appellant was five months in arrears on his spousal support. Appellee withdrew the total amount, $6,000, in her IRA for living expenses during this period.
The evidence offered at trial indicated that as of May 9, 2000, appellant was in arrears on his spousal support obligation in the amount of $5,933.56. Appellant objected to the amount of the arrearage, stating that it should be no more than $4,500 and that he had requested an audit of the Lucas County Child Support Enforcement records. The audit, conducted subsequent to the filing of the magistrate's decision, revealed that as of July 31, 2000, the arrearage was $4,003.60.
Appellee's total income, including spousal support, for 1998 was $12,397, and her monthly expenses were listed as $809. Appellant's income at the time of the original order of spousal support was $34,213; his income, as of November 1, 1999 was $34,432.40. Although his monthly expenses doubled since the divorce, the amounts disclosed by appellant included his second wife's monthly expenses. In addition, and despite dual health coverage from Medicare and Dana Corporation, appellant listed $288 as out-of-pocket monthly medical expenses. He admitted, however, that he believed that this amount was caused by the improper filing (by others, not himself) of his medical claims.
On June 1, 2000, the magistrate filed a decision in favor of appellee on the issues raised by the parties. The decision contains thirty-one findings of fact. In her "Conclusions," the magistrate found:
 "6. The Defendant asked the Court to reduce the Plaintiff's spousal support award by 30% to correspond with his disability benefits. The Defendant's total income includes his disability benefits [from Dana Corporation] as well as his SSD [social security disability] benefits. In addition, the Defendant has access to his 401(k) benefits, his IRA benefits, and his pension. There has not been a substantial change in circumstances since the time of the prior spousal support order as the defendant's annual income has only decreased by $527.60. The Defendant' motion to modify spousal support is found not well taken."
The magistrate also determined that appellant was in contempt of court for his failure to pay spousal support for five months. She sentenced appellant to "up to thirty (30) days in the Lucas County Correction Center." The sentence can be purged by paying appellee "$5,933.56 within thirty (30) days" of the filing of the judgment entry. In addition, the magistrate ordered appellant to pay appellee's attorney fees in the amount of $3,285 within thirty days. The magistrate further stated that if the fees were not paid within that time, appellee was granted a lump sum judgment in that amount.
Appellant filed timely objections to the magistrate's decision, challenging several Findings of Fact, including the amount of the arrearage; the admission of certain exhibits into evidence; and the magistrate's Conclusions. Appellant submitted a transcript of the proceedings below in support of his objections. In his January 12, 2001 judgment entry, the domestic relations judge addressed each of appellant's objections and found them not well-taken. He therefore adopted the magistrate's decision without modification. This timely appeal followed.
Appellant presents combined arguments with regard to his first and second assignments of error. These assignments read:
 "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND APPELLANT IN CONTEMPT OF COURT WHEN IN REALITY APPELLANT WAS THE VICTIM OF CORPORATE BUNGLING."
 "THE COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT TO PAY APPELLEE $5,933.56 SPOUSAL SUPPORT AND $3,285.00 ATTORNEY FEES WITHIN THIRTY(30)DAYS TO PURGE CONTEMPT WHEN THE SPOUSAL SUPPORT WAS AN ERRONEOUS FIGURE, THE APPELLANT WAS ALREADY MAKING PAYMENTS ON THE ARREARAGE, AND THE ATTORNEY FEES WERE
INAPPROPRIATE WHEN NO CONTEMPT WAS SHOWN."
Initially, we note that the ordered payment of appellee's attorney fees were not part of the sanction imposed for appellant's alleged contempt of court. The imposition of these fees does, however, rest upon the finding of contempt. See R.C. 3105.18(G), as effective January 1, 1998. Thus, we must first turn to the issue of whether the trial court abused its discretion in finding appellant in contempt and/or whether the purge condition, the payment of the spousal support arrearage within thirty days was unreasonable.
Failure to pay court-ordered spousal support is a civil contempt. Pughv. Pugh (1984), 15 Ohio St.3d 136, 139-140. The purpose of a civil contempt sanction is to coerce compliance with an underlying court order or to compensate the complainant for loss sustained by the contemnor's disobedience. Boggs v. Boggs (1997), 118 Ohio App.3d 293, 299, citingBrown v. Executive, 200, Inc. (1980), 64 Ohio St.2d 250, 253-254. If one is found in civil contempt, he must be allowed the opportunity to purge himself of contempt. Carroll v. Detty (1996), 113 Ohio App.3d 708, 712.
A reviewing court will not disturb a lower court's ruling concerning contempt absent an abuse of discretion. Lindsay v. Curtis (1996),115 Ohio App.3d 742, 745, citing State ex rel. Delco Moraine Div.,General Motors Corp. v. Industrial Comm. (1990), 48 Ohio St.3d 43, 44. An abuse of discretion connotes action by the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
In the present case, the evidence presented demonstrated that appellant knew that Dana stopped the payment of the disability benefits from which appellee's spousal support was paid. He never informed her of this stoppage, and, rather than paying the lump sum demanded by Dana for the overpayments or paying appellee the spousal support by certified check, he opted to negotiate with Dana for a period of five months. In doing so, he deprived appellee of much needed finances and accumulated a substantial arrearage. We therefore find no abuse of discretion on the part of the trial court in finding appellant in contempt.
Nevertheless, a trial court abuses its discretion in ordering purge conditions which are unreasonable or where compliance is impossible.Burchett v. Miller (1997), 123 Ohio App.3d 550, 552, 637-638; Courtneyv. Courtney (1984), 16 Ohio App.3d 329, 334. In the present case, the sanction imposed was fashioned both to coerce appellant into complying with the court's spousal support order and to compensate appellee for the losses she suffered during the period when she did not receive the court-ordered spousal support. No evidence was offered to establish that the conditions of the purge itself were unreasonable or that appellant was unable to comply with these conditions. Thus, the court was not unreasonable, unconscionable or arbitrary in imposing the payment of the arrearage in thirty days as the condition necessary to purge appellant's contempt.
Nonetheless, because the audit was filed prior to the trial court's final judgment, the amount of the arrearage should have been reduced to $4,003.60. To this extent, and to this extent only, we find that the trial court abused its discretion.
The only argument made by appellant as to the award of attorney fees to appellee is that there was no contempt; consequently, there can be no award of attorney fees.
R.C. 3105.18(G) provides, in material part:
 "(G) * * * If any person required to pay alimony under an order made or modified by a court on or after December 1, 1986, and before January 1, 1991, or any person required to pay spousal support under an order made or modified by a court on or after January 1, 1991, is found in contempt of court for failure to make alimony or spousal support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt."
Here, appellant was found in contempt for failure to comply with the trial court's spousal support order. The domestic relations court admitted the fee statement of counsel for appellee into evidence. The testimony of attorney Colleen Dooley was offered at the hearing on the contempt motion on the question of the reasonableness of these fees. Therefore, we find the trial court did not err in ordering appellant to pay appellee's attorney fees.
Accordingly, appellant's first assignment of error is found not well-taken. Appellant's second assignment of error is found not well-taken as to the court's finding of contempt and award of attorney fees, but is found well-taken only as to the amount of the arrearage.
Appellant's third assignment of error contends:
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FIND A SIGNIFICANT CHANGE OF CIRCUMSTANCES EXISTS FROM THE TESTIMONY OF
APPELLANT AND THAT SPOUSAL SUPPORT SHOULD BE MODIFIED."
R.C. 3105.18(E), as effective January 1, 1998, states that the court may modify the amount or terms of a spousal support order upon a determination that "the circumstances of either party have changed." A "change of circumstances"
includes, but is not limited to, "* * * any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). It must be demonstrated that the change is substantial and was not contemplated at the time of the prior order. Joseph v. Joseph (1997), 122 Ohio App.3d 734, 736, quotingTremaine v. Tremaine (1996), 111 Ohio App.3d 703, 706. "The burden of showing that a reduction of spousal support is warranted is on the party who seeks the reduction." Id. We review the grant or denial of a motion to modify a spousal support obligation under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
In the case under consideration, appellant was able to establish that he was placed on disability in 1996. However, he was unable to show that his income derived from disability benefits in 1999 was substantially reduced when compared to his income from wages in 1987, the time of the prior spousal support order. Granted, his monthly expenses increased during the same period, mainly due to his remarriage. Regardless of this fact, appellant has substantial assets in the form of his 401(k), his IRA and his pension from Dana. As a result, we find no abuse of discretion on the part of the trial court in denying appellant's motion to modify his spousal support obligation. Appellant's third assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed in every respect except for the amount of the arrearage to be paid by appellant to appellee in order to purge his contempt.
Pursuant to App.R. 12(B), this court hereby renders the judgment that should have been rendered by the trial court and therefore modifies the relevant provision as follows:
 "2. Defendant is sentenced to up to thirty (30) days in the Lucas County Correction Center; said sentence and finding of contempt shall be purged by paying to the Plaintiff the sum of $4003.60 within thirty (30) days of the file-stamped date of this Judgment Entry."
Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED, IN PART, AND MODIFIED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., JUDGES CONCUR.