DECISION AND JUDGMENT ENTRY
{¶ 1} John Kim appeals the decision of the Lucas County Court of Common Pleas, Domestic Relations Division denying his motion to modify spousal support and finding him in contempt. Because the trial court did not err by abusing its discretion and its decision was supported by competent credible evidence, we affirm.
 {¶ 2} John Kim and Sandra Kim were divorced on December 10, 1998, after almost 30 years of marriage. Their assets were divided, and John was ordered to pay Sandra $85,000 a year in spousal support. John filed his motion to terminate spousal support 14 months after the final decree. He claimed that he had become destitute and without income. He contended he stopped paying support because one of his companies, K-Omega (Michigan), had filed for bankruptcy, so he no longer received a salary as president. He also argued that he was unable to work due to health problems.
 {¶ 3} The motion to terminate support was denied, and John was found in contempt based on his lack of credibility and his attempt to "create a fiction of financial destitution." John alleges two assignments of error: "It was against the manifest weight of the evidence and an abuse of discretion for the trial court to deny plaintiff's motion for a termination or modification of spousal support"; "It was against the manifest weight of the evidence and an abuse of discretion for the trial court to find plaintiff in contempt and order conditions to purge the contempt which are unreasonable and where compliance is impossible."
 {¶ 4} This court will not reverse a trial court's ruling on a motion to modify spousal support absent an abuse of discretion. Booth v.Booth (1989), 44 Ohio St.3d 142, 144; Stockman v. Stockman (Dec. 15, 2000), Lucas App. No. L-00-1053. This is equally applicable to a contempt holding for failure to pay spousal support. Sweeney v. Sweeney (June 24, 1994), Sandusky App. No. S-93-50; see State ex rel. Celebrezze v. Gibbs
(1991), 60 Ohio St.3d 69, 75. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, citing State v. Adams (1980),62 Ohio St.2d 151, 157. In order to satisfy that high standard, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview General Hospital
(1996), 75 Ohio St.3d 254, 256. Additionally, an appellate court should not substitute its judgment for the trial court's. Pons v. Ohio StateMedical Board. (1993), 66 Ohio St.3d 619, 621. Here, the trial court's decision was borne out by the record and was not an abuse of discretion.
 {¶ 5} This court will also not reverse the trial court in a motion to modify spousal support as against the manifest weight of the evidence if there is some competent, credible evidence to support the trial court's findings. Cesa v. Cesa, Coshocton App. No. 01 CA 12,2001-Ohio-1902; Krause v. Krause (Apr. 27, 1995), Cuyahoga App. No. 66809). See C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, at the syllabus. This also applies in a contempt holding for failure to pay spousal support. Kracht v. Kracht (Apr. 18, 1996), Cuyahoga App. Nos. 68281, 68985. Great deference will be given to the trial court's findings of fact and assessments of witness credibility because it is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections. Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 23; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Here, we find that the trial court's findings were supported by competent, credible evidence.
 First Assignment of Error {¶ 6} John's first assignment of error argues that the trial court should have modified his spousal support because he no longer receives wages from K-Omega (Michigan). The Kims' divorce decree contained a provision that allowed for modification of spousal support. Under R.C.3105.18(E)(1), John was required to show a change in circumstances before obtaining a modification. A change in circumstances "includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). An individual who voluntarily stops working is not entitled to a spousal support reduction. See Stockman, supra.
 {¶ 7} At the June 19, 2001 hearing in support of his motion to modify, John testified that he decided to quit his job at K Omega (Michigan) and did not seek other employment because he has a "lien on his name" and any wages he would get would go to pay his creditors — including the Internal Revenue Service. He stated that he has $200 in his checking account and is being supported by his new wife, Sun-Hee Lee. He lives in his wife's house, and she pays for his Ford Explorer and Jaguar. Testimony also indicated that John owns 100 percent of Alpha K. Enterprise, 100 percent of Hi-Flo, 90 percent of K-Omega (Michigan), 80 percent of RIPAPSA — a Mexican Company, and 49 percent of K-Omega (Ontario). He flew to Mexico on a number of occasions to transport up to $9,999 in cash from banks that dealt with RIPAPSA. He receives his health care through K-Omega (Ontario). John and his son own a flocking patent, which produces income.
 {¶ 8} As to John's alleged health problems, testimony indicated that he has taken trips to Kenya with his church for construction purposes. John contended, however, that his role was mainly supervisory; the implication being, that as a supervisor, his health would suffer no ill effects. That contention is interesting because testimony also indicated that John's role in his various companies was as a supervisor. In fact, his son, the 51 percent owner of K-Omega (Ontario), regularly talked with his father about the running of the company, and he stated that his father "has total authority if he wants to exercise it" over K-Omega (Ontario). The argument, therefore, that John could not work at his companies because of his alleged health problems is not borne out by the record.
 {¶ 9} The record also supports the trial court's findings that John Kim is "a sophisticated businessman" who has "accumulated substantial assets" through his five companies and has "shown himself to be very adept at moving assets and income between his business entities." Therefore, the mere fact that John is no longer receiving a salary from K-Omega (Michigan) — after he voluntarily ended his role as president — does not change the financial picture that was presented at the time of the divorce. John's first assignment of error is found not well-taken.
 Second Assignment of Error {¶ 10} John's second assignment of error argues that he should not have been held in contempt for failing to pay spousal support because he "didn't get any pay from K-Omega (Michigan)." As of December 14, 2001, John had made only $8,000 in support payments and was $177,000 in arrears. In 2000, records show he had received $30,000 in income from K-Omega (Michigan) but paid none of his obligation to his ex-wife.
 {¶ 11} Contempt for non-payment of spousal support is governed by R.C. 2705.031. Failure to pay court-ordered spousal support is civil contempt. Pugh v. Pugh (1984), 15 Ohio St.3d 136, 139-140. Its purpose is to coerce compliance with an underlying court order or to compensate the complainant for loss sustained by the contemnor's disobedience. Boggs v.Boggs (1997), 118 Ohio App.3d 293, 299, citing Brown v. Executive, 200,Inc. (1980), 64 Ohio St.2d 250, 253-254. Also, someone found in civil contempt must be given an opportunity to purge that contempt. Carroll v.Detty (1996), 113 Ohio App.3d 708, 712. John was given that opportunity. He was ordered to start paying his current order of spousal support of $7,083.33 per month with an additional $1,416.67 per month on the arrearage by July 2, 2002. These conditions were not unreasonable or impossible because, as stated above, his financial picture had not truly changed from the time of the divorce, despite his allegations otherwise. Therefore, the trial court's findings were supported by clear and convincing evidence. John's second assignment of error is found not well-taken.
 {¶ 12} The trial court properly denied John's motion to modify spousal support, and it properly found him in contempt for not paying his spousal support obligation. Appellant's two assignments of error not being well-taken, the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.