IN RE TRENT, ALLEGED DELINQUENT CHILD.

[Cite as In re Trent (1989), 43 Ohio St. 3d 607.]

(No. 88-944—Submitted April 26, 1989—Decided June 14, 1989.)

*Alfred E. Baerkircher,* for appellant.

*Richard G. Ward,* prosecuting attorney, and *Christine B. Henthorne,* for appellee.

*Alice C. Shotton* and *Mark I. Soler,* urging reversal for *amicus curiae,* the Youth Law Center.

This appeal is dismissed, *sua sponte,* as having been improvidently allowed.

MOYER, C.J., HOLMES, DOUGLAS and RESNICK, JJ., concur.

SWEENEY, WRIGHT and H. BROWN, JJ., dissent.

WRIGHT, J., dissenting. I respectfully dissent from my colleagues' vote that this appeal was improvidently allowed. I would hear this case on its merits because it involves important issues concerning the well-being of the hundreds of children in our state who run away from their homes — an act which is not a crime for an adult, but because of the child's status, *i.e.,* being underage, brings him or her within the jurisdiction of the juvenile court. What does happen and what should happen under Ohio law to these "status offenders" is what this case is about.

This is a subject which has never been adequately addressed by this court and one which has been considered important enough to be addressed by numerous other state supreme courts.[1]

The salutary purpose of the Juvenile Code is to "provide for the care, protection, and mental and physical development of children * * * [and to] * * * *remov[e] the consequences of criminal behavior and the taint of criminality from children committing delinquent acts and to substitute therefor a program of supervision, care and rehabilitation[.]* * * *"* (Emphasis added.) R.C. 2151.01; see, also, Juv. R. 1(B); *In re M.D.* (1988), 38 Ohio St. 3d 149, 527 N.E. 2d 286. The record in this case shows that Tina, at age sixteen, was adjudicated an "unruly" child as a result of running away from a clearly abusive home situation. "Unruly" is defined in R.C. 2151.022, and it encompasses the status-offender runaway. There is no indication in this record that Tina was notified of her statutory right to counsel during that "adjudication." Such a silent record has been held to constitute reversible error. See *In re Kriak* (1986), 30 Ohio App. 3d 83, 30 OBR 140, 506 N.E. 2d 556. Indeed, the record indicates that counsel was not appointed until long

---

[1] State statutory schemes vary, but most states have the same overall purposes as the Ohio statutory scheme and provide for separate custody of differently classified juveniles. The California Supreme Court in *In re Michael G* (1988), 44 Cal. 3d 283, 243 Cal. Rptr. 224, 747 P. 2d 1152, cited opinions from seven other states and adopted the standards first set forth in *In Interest of D.L.D.* (1983), 110 Wis. 2d 168, 327 N.W. 2d 682. These standards are summarized *infra.*

after the "adjudication." However, this unhappy problem is not the focus of my disagreement with my colleagues.

Construing the applicable juvenile statutes liberally and the criminal statutes at issue narrowly, as is clearly required by law, I must conclude that the shelter where Tina was placed was *not* a place of detention for the purposes of the criminal escape statute, R.C. 2921.34, violation of which is a felony of the fourth degree. "Custody" or "care" under the Juvenile Code must *not* be confused with "arrest" or "confinement," the terms used in defining "detention" and "detention facility" as they appear in R.C. 2921.34. See R.C. 2921.01(E) and (F). The order that adjudicated Tina as unruly stated that she should "remain in the *temporary shelter care* of the Ross County Children's Services," in order for that agency to conduct a "pre-dispositional investigation * * *." (Emphasis added.) The Committee Comment to R.C. 2921.34 refers to escape from a "lock-up, jail, workhouse, *juvenile detention home,* or penal or reformatory institution." (Emphasis added.) Furthermore, the criminal escape statute and the Committee Comment clearly indicate that the defendant must have "kn[own] [s]he was under detention." The order herein certainly does *not* supply that notice.

Local Rule II(3) of the Ross County Juvenile Court lists three facilities for juveniles:

"The South Central Ohio Regional Detention Center is hereby designated as a proper place of *detention* for juveniles.

"The Children's Service Center, located at Western Avenue and Locust Street in the City of Chillicothe, Ohio, is hereby designated as an emergency *shelter* care facility for juveniles.

"The residential facility operated as Roweton's Boy's Ranch, Inc., is hereby designated as a *non-secure detention* facility for juveniles." (Emphasis added.)

Tina was sent to the second facility noted above which is, of course, a *shelter.* The Executive Secretary of Ross County Children's Services testified that the *shelter* is *not* a "*detention facility.*"

R.C. 2151.011(B)(4) defines a "shelter" for purposes of the Juvenile Code as follows:

" 'Shelter' means the temporary care of children in physically unrestricted facilities pending court adjudication or disposition."

By rule children who are alleged to be neglected are not to be put in any facility where there are children who are alleged to be delinquent, unless upon order of the court. Juv. R. 7(H). Given the three choices for placement of children in Ross County, the shelter is by elimination the facility where neglected and unruly children should be placed, since R.C. 2151.354 mandates that unruly children be treated, initially at least, as neglected children.

Furthermore, Juv. R. 7 uses the words "detention *or* shelter care" throughout as the choices for children in custody. R.C. 2921.34, the basis of the warrant that was issued to arrest Tina after she walked away from the shelter clearly contemplates a "juvenile detention" facility. Accordingly, I can only conclude that R.C. 2921.34 does not apply under the facts in this case.

In addition, I must conclude that adjudicating Tina a juvenile delinquent for walking away from a shelter runs counter to R.C. 2151.354, the statute dealing with disposition of an unruly child.

The statutory classification of an unruly child has been in existence only

since 1969. The General Assembly provided specific statutory classifications of children and limited the court's discretion in dealing with them. Court disposition of unruly children is set forth in R.C. 2151.354, which requires the court to treat unruly children as set forth therein or as neglected children. The statute further provides:

"If after making such disposition the court finds, upon further hearing, that the *child is not amenable to treatment or rehabilitation under such disposition,* the court may make a disposition otherwise authorized in section 2151.355." (Emphasis added.) In other words, only after such a showing can an unruly child be treated as a juvenile delinquent and be placed in a detention facility for delinquents.

No treatment or rehabilitation had yet been undertaken for Tina at the time she walked away from the shelter and was then adjudicated a delinquent. The court certainly did not set forth such findings as required by R.C. 2151.354. The General Assembly emphasized its preference that unruly children, *i.e.,* status offenders, at the outset at least, be treated as neglected children.

What Tina was found guilty of is in some measure akin to a probation violation or even contempt when she did not "subject herself to the reasonable control of the staff" of the shelter. This was required under the first condition listed in the court's entry placing her in the shelter after she was adjudicated as "unruly."

Court orders should not be ignored with impunity by children, and violation of a court order may be the basis for a finding of delinquency. R.C. 2151.02(B). However, the contempt powers of a court should not be invoked quickly in this context and a status offender who has departed a shelter on one occasion should not be given the "taint" of criminality and adjudicated or treated as a juvenile delinquent. Under R.C. 2151.354 an unruly child may be left in the status of an unruly child but treated as a delinquent and incarcerated in a detention facility because of failure of "treatment or rehabilitation." It is this sort of placement situation that is contemplated by the criminal escape statutes when they include "unruly" children within their purview. Before such a detention placement of an unruly child or the bootstrapping of status from unruly to delinquent occurs for violation of a court order, the following criteria should be met:

(1) The juvenile should be given sufficient notice to comply with the order and understand its provisions;

(2) violation of a court order must be egregious;

(3) less restrictive alternatives must be considered and found to be ineffective; and

(4) special confinement conditions should be arranged so that the status offender is not put with underage criminals. See Juv. R. 7(H) and *In Interest of D.L.D.* (1983), 110 Wis. 2d 168, 182, 327 N.W. 2d 682, 689. The facts in this case obviously do not meet the above criteria.

Bootstrapping of a status offender into a juvenile delinquent has been rightly termed a "vicious practice."[2] We have tacitly approved a result that seems to allow such "bootstrapping." I believe that reading *in pari materia* all the statutes applicable to juveniles requires a holding that the bootstrapping that occurred here was too hasty, contrary to law, and not in the best interest of anyone.

SWEENEY and H. BROWN, JJ., concur in the foregoing dissenting opinion.

---

[2] *In re Ronald S.* (1977), 69 Cal. App. 3d 866, 871, 138 Cal. Rptr. 387, 391.