OPINION *Page 2 
{¶ 1} Defendant-appellant Shardi Burt, a juvenile, appeals her adjudication in the Stark County Court of Common Pleas, Juvenile Division, finding her delinquent on the charge of violating a prior court order. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE {¶ 2} In 2003, Shardai Burt, age 13 at the time, was charged with delinquency as a result of committing the criminal offenses of obstructing official business, a misdemeanor of the second degree if committed by an adult in violation of R.C. 2921.31, and disorderly conduct, a misdemeanor of the fourth degree if committed by an adult in violation of R.C. 2917.11(A). [In re Burt, Stark County Court of Common Pleas, Case No. 2005 JCR 137265]. Appellant pleaded true to these allegations, and was adjudicated delinquent on each count by the Stark County Juvenile Court. Upon adjudicating her a delinquent child, the court ordered that appellant exhibit good behavior at home, school, and the community; to attend school (absent a medical excuse); and, to complete mediation (if not already completed).
 {¶ 3} In October 2005, another juvenile complaint was filed against appellant, who had turned 14 by then, charging her with delinquency for violating a prior court order (VPCO), in violation of R.C.2152.02(F)(2). [In re Burt, Stark County Court of Common Pleas, Case No. 2005 JCR 139459]. The complaint alleged that appellant had been leaving home without permission, staying out all night, and that on one occasion she left for school and did not return home until two days later, with her whereabouts being known. On November 18, 2005 Appellant pleaded true to this charge, and was found delinquent by the magistrate based upon her plea and admission. The *Page 3 
magistrate's disposition was approved by the trial judge. The disposition for the violation of the prior court order charge was community control; a curfew (home by 7:00 p.m. each night, unless accompanied by an adult), good behavior at home, school, and the community; mandatory school attendance (except for medical excuse); 10 hours of community service to be performed within 20 days; and, continued counseling at Quest.
 {¶ 4} In September of 2006, another VPCO complaint was filed against appellant, charging her with violation of a prior court order in violation of R.C. 2152.02(F) (2) for violating the conditions of her probation. [In re Burt, Stark County Court of Common Pleas, Case No. 2006 JCR 3114]. Appellant was specifically charged with leaving home without parental permission or with her probation officer's permission and staying away over the weekend. This complaint gives rise to the instant appeal.
 {¶ 5} Prior to trial, appellant moved to dismiss the complaint on the ground that the complaint did not allege a valid delinquency claim. According to appellant, a VPCO allegation is not a delinquency charge provided by statute, and thus the court did not have jurisdiction to proceed. Appellant argued that the proper course of proceedings would have been to charge appellant with violation of her probation and to file a motion to revoke or modify her probation. The Magistrate took appellant's motion to dismiss under advisement (T. at 4). At the pretrial hearing, the Magistrate overruled appellant's motion to dismiss and appellant requested a court trial (T. at 7). In his ruling, Magistrate Nist specifically held:
 {¶ 6} "Motion to dismiss is denied. Court believes ORC 2152.02(F) (2) permits the court to proceed with a violation of court order complaint. This court does not agree *Page 4 
with the reasoning set forth within the brief submitted by the juvenile. Court supports the state's position opposing the motion to dismiss."
 {¶ 7} Prior to the court trial, appellant filed an objection to the Magistrate's decision with the assigned judge and requested the Magistrate's denial of the motion to dismiss be set aside. The judge heard oral argument on October 10, 2006 and overruled appellant's objection (T. at 44). At the court trial, appellant pled true to Violation of Prior Court Order without waiving her right to appeal the jurisdictional and constitutional issues. (T. at 47-49). The magistrate imposed court placement, remanding appellant to the Juvenile Attention Center for placement until a group home is available, with placement in the home to be immediate; mandatory counseling and compliance with all recommendations for treatment.
 {¶ 8} Appellant filed another objection with the judge and stipulated to waiving oral argument, as the issues had already been argued before the judge. On October 27, 2006, the judge overruled appellant's objection. Ms. Burt filed her notice of appeal.
 {¶ 9} It is from the trial court's denial of her motion to dismiss that appellant now appeals raising the following five assignments of error:
 {¶ 10} "I. WHETHER THE STATE'S `VIOLATION OF PRIOR COURT ORDER' CHARGE FOR VIOLATING A TERM OF PROBATION, ARISING FROM A DELINQUENCY ADJUDICATION, VIOLATED THE JUVENILE'S FIFTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS.
 {¶ 11} "II. WHETHER FILING A NEW CHARGE AGAINST A JUVENILE FOR `VIOLATION OF PRIOR COURT ORDER,' REGARDLESS OF THE ORIGINAL *Page 5 
OFFENSE, IS A VIOLATION OF THE JUVENILE'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT.
 {¶ 12} "III. WHETHER JUVENILES CHARGED WITH A `VIOLATION OF PRIOR COURT ORDER' HAVE BEEN IMPROPERLY CHARGED IN VIOLATION OF THE FIFTH ANDFOURTEENTH AMENDMENT DOUBLE JEOPARDY CLAUSE AND ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 13} "IV. WHETHER FAILING TO INFORM JUVENILES, AT THE ORIGINAL DISPOSITION, OF THE POTENTIAL PUNISHMENT FOR VIOLATING CONDITIONS OF PROBATION VIOLATES JUVENILES' FIFTH AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AS WELL AS ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 14} "V. WHETHER JUVENILES MAY BE ADJUDICATED DELINQUENT UNDER O.R.C. 2152.02(F)(2), AS THE STATUTE IS UNCONSTITUTIONAL, IMPROPER, AND VOID FOR VAGUENESS, THEREFORE VIOLATES JUVENILES' FIFTH ANDFOURTEENTH AMENDMENT RIGHT TO DUE PROCESS."
 I. II. {¶ 15} Because we find the issues raised in appellant's first and second assignments of error are closely related for ease of discussion we shall address the assignments of error together.
 {¶ 16} In her first assignment of error appellant argues that charging a juvenile with being delinquent by reason of violating a prior court order is improper, especially if the basis of the violation would otherwise result in an unruly charge. Appellant contends *Page 6 
that an unruly charge is a status offense, i.e. an offense consisting of conduct that would not constitute an offense if engaged in by an adult.
 {¶ 17} In her second assignment of error appellant argues that R.C.2152.02(F) (2) which provides for delinquency adjudication for violation of a prior court order is only a definition section and thus any delinquency violation based upon that section violates due process. Appellant contends that the proper course of action is for the State to file a motion to revoke probation pursuant to Juv. R. 35.
 {¶ 18} In Ohio, all crimes are statutory. Municipal Court of Toledo v.State ex rel. Platter (1933), 126 Ohio St. 103, 184 N.E. 1; Eastman v.State (1936), 131 Ohio St. 1, 1 N.E.2d 140, appeal dismissed299 U.S. 505, 57 S.Ct. 21, 81 L.Ed. 374; State v. Fremont Lodge, Loyal Order ofMoose (1949), 151 Ohio St. 19, 84 N.E.2d 498; State v. Cimpritz (1953),158 Ohio St. 490, 492, 110 N.E.2d 416, 417-18. The elements necessary to constitute the crime must be gathered wholly from the statute and the crime must be described within the terms of the statute. Davis v.State (1876), 32 Ohio St. 24, 28 State v. Cimpritz, supra. Moreover, no act is a crime except an act done in violation of the express provisions of a statute or ordinance legally enacted. Toledo Disposal Co. v.State (1914), 89 Ohio St. 230, 106 N.E. 6.
 {¶ 19} Defining crimes and fixing penalties are legislative, and not judicial, functions. United States v. Evans (1948), 333 U.S. 483, 486,68 S.Ct. 634, 636. "[W]here Congress has exhibited clearly the purpose to proscribe conduct within its power to make criminal and has not altogether omitted provision for penalty, every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose. This is as true of penalty provisions as it is *Page 7 
of others". United States v. Brown (1948), 333 U.S. 18, 68 S.Ct. 376;United States v. Evans, supra 333 U.S. at 486, 68 S.Ct. at 636.
 {¶ 20} R.C. 2152.02 provides in relevant part:
 {¶ 21} "(F) `Delinquent child' includes any of the following:
 {¶ 22} "(1) Any child, except a juvenile traffic offender, who violates any law of this state or the United States, or any ordinance of a political subdivision of the state, that would be an offense if committed by an adult;
 {¶ 23} "(2) Any child who violates any lawful order of the court made under this chapter or under Chapter 2151. of the Revised Code other than an order issued under section 2151.87 of the Revised Code;
 {¶ 24} "(3) Any child who violates division (C) of section 2907.39 or division (A) of section 2923.211 or division (C) (1) or (D) of section2925.55 of the Revised Code;
 {¶ 25} "(4) Any child who is a habitual truant and who previously has been adjudicated an unruly child for being a habitual truant;
 {¶ 26} "(5) Any child who is a chronic truant".
 {¶ 27} Juv. R. 2 (I) provides "`Delinquent child' has the same meaning as in section 2152.02 of the Revised Code."
 {¶ 28} In the case at bar, appellant was charged with violating a prior court order pursuant to R.C. 2152.02(F) (2). In the adult context, violation of a court order is treated as contempt of court. R.C. 2705.02
states in relevant part:
 {¶ 29} "A person guilty of any of the following acts may be punished as for a contempt: *Page 8 
 {¶ 30} "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer . . ."
 {¶ 31} In order to be found guilty of contempt it must be shown that the alleged contemptor had actual notice of the court's order and that the alleged contemptor intended to defy the court. Midland SteelProducts Co. v. U.A.W. Local 486 (1991), 61 Ohio St.3d 121, 127,573 N.E.2d 98, 103. In its simplest terms, contempt of court is disobedience of an order of a court. Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court. Accordingly it is the doing of the act which he has been commanded not to do that the contemptor is punished, not the act itself. In the case at bar, the juvenile was not simply disobeying her parent, custodian or guardian by running away from home; rather her actions were a direct affront to the juvenile court's previous orders.
 {¶ 32} In the case at bar, R.C. 2152.02(F) (2) defines a delinquent child as a child who disobeys a court order. Accordingly, the elements of the offense are the same as for contempt pursuant to R.C. 2705.02, i.e., actual notice of the order and intent to defy the order. The penalties for a violation of R.C. 2152.02(F) (2) are the dispositions available for delinquent children pursuant to R.C. 2152.19. The dispositions for a delinquent-misdemeanant and an unruly child are similar. See, R.C. 2152.19 and R.C. 2151.354. We would further note that a court of common pleas has inherent power to punish a contemptuous refusal to comply with its order by imposing appropriate sanctions without regard to any statutory grant of such power. Harris v.Harris (1979), 58 Ohio St.2d 303, 307, 390 N.E.2d 789, 792; In reCox (Nov. 8, 1993), *Page 9 
5th Dist. No. CA-9238. In other words a juvenile court has the inherent power to punish a juvenile for disobedience of its lawful orders without regard to R.C. 2152.02.
 {¶ 33} Accordingly, appellant's contention that R.C. 2152.02 is insufficient to charge an offense is rejected. However, the real issue raised by appellant is whether the juvenile court can punish a violation of a condition of probation as a violation of a prior court order.
 {¶ 34} Again, using contempt of court as an analogy, "Ohio appellate courts appear to have divided on the issue. Some courts have assumed that probation revocation proceedings are the sole remedy. See, e.g.,State v. Smith, Mahoning App. No. 01 CA 187, 2002-Ohio-6710 ("The municipal court treated Smith's alleged failure to attend the counseling sessions as an act of contempt rather than a violation of probation. This was an error by the trial court."); City of Shaker Heights v.Hairston (Dec. 10, 1998), Cuyahoga App. No. 74435. Other courts have assumed that contempt proceedings could be used in such cases. See, e.g.State v. Daugherty (2006), 165 Ohio App.3d 115, 2006-Ohio-240,844 N.E.2d 1236 ("While Daugherty claims that the appropriate course of action for the court was to consider revocation of probation under Crim.R. 32.3, we do not understand him to argue that this was the only course open to the court. In other words, indirect contempt proceedings, if conducted properly, may have been appropriate."); State v. Deeds
(Apr. 30, 1998), Coshocton App. No. 97 CA 21". State v. Patton, 10th Dist. No. 06AP-665, 2007-Ohio-1296 at ¶ 11.
 {¶ 35} Jurisdictions other than Ohio that have considered this issue "have come to three different conclusions. If a defendant violates a condition of his probation, Illinois case law states that he may be charged with contempt of court. People v. Boucher, 179 *Page 10 III.App.3d 832, 834, 128 III.Dec. 842, 844, 535 N.E. 2d 56, 58 (1989);People v. Patrick, 83 III.App.3d 951, 953, 39 III.Dec. 451, 453, 404N.E. 2d 1042, 1044 (1980); People v. Cook, 53 lll.App.2d 454, 202N.E. 2d 674, 675 (1964). An explanation for this rule may be that prior to 1963, the effective date of Illinois' current Code of Criminal Procedure, `contempt of court was the only sanction permissible' for violations of conditions of probation. Patrick, 39 III.Dec. at 453, 404N.E. 2d at 1044. Maryland case law is directly in opposition to that of Illinois. In Maryland the defendant can be charged only with violation of his probation order, not contempt. Williams v. State, 72 Md.App. 233,528 A.2d 507, 508 (1987). Tennessee has taken a middle ground, allowing the sentencing judge to choose either punishment, State v.Williamson, 619 S.W.2d 145, 147 (Tenn.Crim.App.1981), and Alaska allows a court to use its contempt power in such a situation only if the defendant had notice, prior to violating the probation condition, that such a violation could result in a contempt of court charge. Alfred v.State, 758 P.2d 130, 132 (Alaska Ct.App.1988).
 {¶ 36} "In Williams [v. State], the Maryland court reviewed Maryland authority stating the foundations for the probation order and then explained:
 {¶ 37} "[w]hen a probationer violates a condition of his probation, he is not subject to an additional punishment for that violation; but rather to the forfeiture of his conditional exemption from punishment for the original crime. Because probation involves a conditional exemption from punishment, rather than a part of the penalty, a court may condition probation upon acts or omissions which it otherwise lacks the authority to impose. [528 A.2d at 508; footnote and citations omitted]". State v. Williams (1989), 234 N.J. Super. 84, 92,560 A.2d 100, 104. *Page 11 
 {¶ 38} In State v. Williams, supra, the court drew "a distinction between an order directed to a defendant or another to do or refrain from doing a particular act (the violation of which could be the basis of a contempt of court citation by a judge or indictment by a grand jury), and a conditional order which either states the ramifications of its violation or has such consequences established by law. This distinction was recognized in an analogous bail-bond case. In UnitedStates v. Hall, 198 F.2d 726 (2d Cir.1952), cert. den. 345 U.S. 905, 73S.Ct. 641, 97 L.Ed. 1341 (1953), the defendant was charged with criminal contempt of court for being outside the jurisdiction of the court, and for violating an order requiring him to surrender. The court ruled that the defendant could not be held in contempt for violating the order to remain in the jurisdiction (a condition of the bond which provided its own remedy), but could be held in contempt for not surrendering. 198 F.2d at 731.
 {¶ 39} "Contempt of court should not be superimposed as an additional remedy in a probation violation setting if the act that occasions the violation itself is not otherwise criminal". Williams supra,234 N.J. Super. at 91 560 A.2d at 103-104.
 {¶ 40} We agree that the more logical approach is that the courts should not use the inherent contempt power to punish a violation of a condition of probation that would not otherwise constitute an offense. We do not believe that when the Legislature expressly provided that the sanction for a violation of probation (other than for the inherent criminality of the act) would be a revocation of probation, it intended that a defendant would be subject to a new indictment for contempt in addition to the punishment for the original offense. That being said, we must now recognize that a *Page 12 
debate has arisen among the courts as to whether that principal should be applied in the context of a juvenile proceeding.
 {¶ 41} The Supreme Court of Kentucky has noted:
 {¶ 42} "The Juvenile Code simply does not allow a court to give up on the rehabilitation of a juvenile who refuses to perform the terms of probation. Thus, the contempt power exists for the purpose of compelling the juvenile to comply with the court's orders and to enable the court to help the juvenile become a productive citizen. `KRS Chapter 635 shall be interpreted to promote the best interests of the child through providing treatment and sanctions to reduce recidivism and assist in making the child a productive citizen. . . .' KRS 600.010(2) (e). Nor can it be said that the imposition of contempt sanctions for violations of specific conditions of probation, violates the Appellant's due process rights of fair treatment and/or double jeopardy. See, Butts v.Commonwealth, 953 S.W.2d 943 (Ky. 1997), and Commonwealth v. Burge,947 S.W.2d 805 (Ky. 1997)". A.W. v. Kentucky (2005), 163 S.W.3d 4, 6-7. See, also G.S. v. State (Fla.Dist.Ct.App. 1998), 709 So.2d 122, 123 (denying habeas petition and holding that courts have the authority to issue a contempt sanction against a juvenile for violating a community control order); In the Interest of Doe (2001), 96 Hawaii 73, 26 P.3d 562, 571
(affirming adjudication of delinquency for criminal contempt where chronic truancy had placed the juvenile under protective supervision and juvenile subsequently violated conditions of court order of supervision); State ex rel. LE.A. v. Hammergren (Minn. 1980), 294N.W.2d 705, 707-08 (affirming dismissal of habeas petition, recognizing juvenile court's authority to find a juvenile in contempt of court, but cautioning that status offender normally should be placed in a shelter care facility, and *Page 13 
only egregious circumstances warranted confinement of status offender in secure detention facility).
 {¶ 43} The Court of Appeals for the Eleventh District has taken the opposite approach:
 {¶ 44} "This court finds no authority for the juvenile court to proceed in contempt when the issue is a probation violation allegation. R.C. 2151.412 (E) (1) allows the court to proceed in contempt for a violation of a journalized case plan. However, that section specifically applies only to the parties involved in cases of abuse, neglect or dependency, temporary or permanent custody, protective supervision, or long-term foster care.
 {¶ 45} "Further, in the prosecution of the violation of probation terms, the only remedy referred to under R.C. 2151.355 is that of a probation revocation". In re Norwalk (1999), 133 Ohio App.3d 396,398-99, 728 N.E.2d 411, 412-13. (Footnotes omitted). See, also, A.W. v.Kentucky, supra 163 S.W.3d at 7-11. (Cooper, J. dissenting). ["a trial court's contempt powers should be narrowly defined and employed only when no other remedy is available. . . ."].
 {¶ 46} Unquestionably, the preferred method for dealing with actions such as those taken by appellant would be the institution of revocation proceedings. However, in the unique context of delinquency dispositions, the dispositions available to the juvenile court would be the same when, as in the case at bar, the juvenile is originally adjudicated as a delinquent child. However, we agree with the concern expressed by the Tenth Appellate District: "[w]e emphasize that the use of contempt proceedings is not without limitations, and thus should be used sparingly in situations where probation *Page 14 
revocation or other sentencing provisions are available. In particular, we would closely consider any situation in which it appeared that a trial court was using contempt proceedings in an attempt to increase the maximum period of incarceration applicable for the offense in the underlying case. However, since in this case, the 30-days imposed for contempt is less than the maximum penalty of 90-days to which appellant could be sentenced for his underlying offense, that issue is not before us. Nor do we address the issue of whether any time served on a contempt citation in this situation would act to reduce the amount of time that could be imposed on the underlying sentence". State v. Patton, supra2007-Ohio-1296 at ¶ 15.
 {¶ 47} The issue of whether the juvenile court was using the violation of a prior court order proceedings in an attempt to increase the maximum period of incarceration applicable for the offense in the underlying case is not an issue before us in the case at bar. Nor do we address the issue of whether any time served on a violation of a prior court order citation in this situation would act to reduce the amount of time that could be imposed on the underlying sentence. In the case at bar, appellant was subject to the same dispositional alternatives whether the action was filed as a revocation of probation or as a violation of a prior court order. Detention was permissible because either charge was classified as a delinquency, not as a status offense.
 {¶ 48} Because delinquency proceedings are fundamentally different from adult criminal proceedings, not all constitutional protections afforded to adult criminals have been extended to juveniles. Schall v.Martin (1984), 467 U.S. 253, 263, 104 S.Ct. 2403, 2409. Because a juvenile has a liberty interest in freedom from institutional restraints, the due process clause of the Fifth Amendment to the United States Constitution, *Page 15 
applicable to the several states pursuant to the Fourteenth Amendment thereto, is applicable to juvenile detention proceedings.Schall, 467 U.S. at 263, 104 S.Ct. at 2409; In re Gault (1967),387 U.S. 1, 13-14, 87 S.Ct. 1428, 1436-37. Pretrial detainment of juveniles is thus measured by the "fundamental fairness" due process standard established in In re Gault, 387 U.S. at 29-30, 87 S.Ct. at 1444-45, andIn re Winship(1970), 397 U.S. 358, 365-68, 90 S.Ct. 1068, 1073-75.Schall, 467 U.S. at 263, 104 S.Ct. at 2409. Decisions articulating due process standards for evaluating the circumstances wherein a juvenile may be detained have sought to accommodate the goals and philosophies of the juvenile system within the due process framework of fundamental fairness.
 {¶ 49} The conclusion that liberty interests possessed by juveniles are not fundamental rights is based in part on the fact that unlike an adult, a juvenile is always subject to some measure of custodial supervision. Flores, 507 U.S. at 292, 301-303, 113 S.Ct. at 1447-48;Schall, 467 U.S. at 265, 104 S.Ct. at 2410. Juveniles "are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as parens patriae." Schall,467 U.S. at 265, 104 S.Ct. at 2410; see New Jersey v. T.L.O. (1985),469 U.S. 325, 336, 105 S.Ct. 733, 739-40. In addition, juveniles are not assumed to have the capacity to provide independently for themselves.Schall, 467 U.S. at 265, 104 S.Ct. at 2410; see Flores,507 U.S. at 301-303, 113 S.Ct. at 1447-48.
 {¶ 50} In the case at bar, appellant, prior to entering her admission to the charge, was never remanded to the detention center as a result of any dispositional order of the juvenile court. Rather, any detention of appellant was pre-adjudicatory and pre- *Page 16 
dispositional. We note that the juvenile court conducted a detention hearing in accordance with Juv. R. 7 on September 19, 2006. At that time the juvenile court remanded appellant to the juvenile attention center pending a pre-trial hearing scheduled for October 4, 2006. The juvenile court found pursuant to Juv. R. 7 (A) (2) and (3) that detention of appellant was necessary because she may abscond and further that appellant had no parent, guardian, custodian, or other person able to provide supervision and care for her and to return her to court when required. The trial court continued the detention after the pre-trial hearing finding that detention was necessary to protect the appellant and because she may abscond. (Magistrates Order, October 4, 2006). Trial was scheduled for October 11, 2006. On that date appellant entered an admission to the charge.
 {¶ 51} In the case at bar, it does not appear that the appellant filed a motion for release pursuant to Juv. R. 7(G) alleging that she had been held in excess of ninety days in violation of R.C. 2151.34 at any time prior to entering her admission to the charge. The juvenile court specifically noted that it would review the detention order if appellant's circumstances were to change. (T. at 6). At all times, appellant was represented by appointed counsel. Appellant was notified in writing of the conduct that was alleged to be in violation of the prior court order by the complaint filed September 18, 2006. (T. at 10). The juvenile court informed appellant of her right to a trial in which the State would have to prove the allegations beyond a reasonable doubt. (T. at 11). The court further explained to appellant her right to remain silent or to testify; to subpoena witnesses; and to cross-examination of the State's witnesses. (Id.). The juvenile court further explained the possible dispositions should appellant admit the *Page 17 
violation or be found guilty after trial. (Id.). Accordingly, appellant's due process rights were not violated.
 {¶ 52} Appellant's main disagreement with the use of delinquency adjudication for violation of a prior court order concerns the balance between the legislative policy of discouraging the incarceration of status offenders and the assurance of sufficient authority for courts to enforce orders. This view was espoused by Justices Sweeney, Wright and Herbert R. Brown in a case that the Ohio Supreme Court declined to decide:
 {¶ 53} "Court orders should not be ignored with impunity by children, and violation of a court order may be the basis for a finding of delinquency. R.C. 2151.02(B). However, the contempt powers of a court should not be invoked quickly in this context and a status offender who has departed a shelter on one occasion should not be given the `taint' of criminality and adjudicated or treated as a juvenile delinquent. Under R.C. 2151.354 an unruly child may be left in the status of an unruly child but treated as a delinquent and incarcerated in a detention facility because of failure of `treatment or rehabilitation'. . . Before such a detention placement of an unruly child or the bootstrapping of status from unruly to delinquent occurs for violation of a court order, the following criteria should be met:
 {¶ 54} "(1) The juvenile should be given sufficient notice to comply with the order and understand its provision;
 {¶ 55} "(2) violation of a court order must be egregious;
 {¶ 56} "(3) less restrictive alternatives must be considered and found to be ineffective; and *Page 18 
 {¶ 57} "(4) special confinement conditions should be arranged so that the status offender is not put with underage criminals. See Juv.R. 7(H) and In Interest of D.L.D. (1983), 110 Wis.2d 168, 182, 327 N.W.2d 682, 689". In re Trent (1989), 43 Ohio St.3d 607, 609, 539 N.E.2d 630, 639.
 {¶ 58} In the case at bar, it must first be observed that appellant was initially detained on the basis of allegations that she committed the offenses of obstructing official business, a misdemeanor of the second degree if committed by an adult and disorderly conduct, a misdemeanor of the fourth degree if committed by an adult. These offenses are not status offenses. To the extent the juvenile's analysis is focused exclusively on the assumption that appellant was detained on the basis of an alleged status offense, the analysis is fundamentally flawed. Had the State pursued a motion to revoke probation as appellant suggests was the proper course of action, the sentence imposed on appellant would be as a reinstatement of her original sentence as punishment for the offenses of obstructing official business and disorderly conduct — not for running away from home. An initial sentence of probation is deemed to be conditional and not final. In re Kelly
(Nov. 7, 1995), Franklin App. No. 95-APF05-613. (Citations omitted). Thus, where probation is conditioned on certain terms, the sentence can be modified for noncompliance with those terms. Id. Upon revocation of probation a court may impose any sentence that it could have originally imposed. In re Herring (July 10, 1996), Summit App. No. 17553; In theMatter of: Cordale R. (Jan. 10, 1997), Erie App. No. E-96-019. In the case at bar, upon revocation of appellant's probation the juvenile court would be free to impose any of the dispositions available for a delinquent-misdemeanant pursuant to R.C. 2152.19. Having previously been adjudicated as a *Page 19 
delinquent child at the original adjudicatory hearing, the subsequent adjudication for violation of a prior court order did not transform a status offender into a delinquent. The legislative policy, and the related procedures, to discourage incarceration of status offenders are not invoked with delinquent juveniles. The legislature intended to treat status offenders differently than delinquents. The legislature's intent was demonstrated by requiring application of distinct criteria before a status offender may be incarcerated. Appellant is not a status offender, and thus does not fall within the legislative concerns regarding the dispositions available for status offenders codified in R.C. 2151.354.
 {¶ 59} Accordingly, appellant's first and second assignments of error are overruled.
 III. {¶ 60} In her third assignment of error appellant claims that the trial court's actions in prosecuting her for violating a prior court order constitute multiple punishments in violation of his right to freedom from double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I, of the Ohio Constitution.
 {¶ 61} Application of the Double Jeopardy Clause depends upon the legitimacy of a defendant's expectation of finality in the judgment.In re Kelly (Nov. 7, 1995), Franklin App. No. 95APF05-613. In the instant case, as in Kelly, appellant did not have a legitimate expectation that her sentence of community control sanctions was complete at the time the court prosecuted the second violation of a prior court order charge because her sentence placing her under community control sanctions was conditioned *Page 20 
upon his compliance with the terms and conditions of the community control sanctions and the orders of the court.
 {¶ 62} In addressing the authority of a court to commit a juvenile to DYS for a probation violation, it has been held that a court may properly commit a delinquent minor to DYS for a probation violation, even though the minor was originally given only probation and a suspended commitment was not imposed at the time of the initial disposition. In re Herring (July 10, 1996), Summit App. No. 17553 at 4-5. Further, committing a juvenile to a detention center after a probation violation does not punish that juvenile twice for the same offense. In re Kelly, supra, at 11-12. A violation of a prior court order is a separate and distinct act for which punishment can be imposed. Such punishment does not constitute multiple punishments for the same offense.
 {¶ 63} Appellant's third assignment of error is overruled.
 IV. {¶ 64} The appellant's contention in her fourth assignment of error that her due process rights were violated because the juvenile court failed to inform her at the time of her original disposition of the consequences of a violation of court's order is not properly before this court. Appellant has failed to provide a transcript of the original dispositional hearing and the 2005 dispositional hearing for appellant's first violation of a prior court order charge. "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199, citing State v. Skaggs (1978),53 Ohio St.2d 162, 163. This requirement is set forth in App.R. 9(B), which provides, in pertinent part, as follows: "* * * *Page 21 
the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record * * *." Further, "[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp at 199.
 {¶ 65} In the case sub judice, appellant did not meet her burden, under App.R. 9(B), and supply this Court with a transcripts of the proceedings from her original admission and the original disposition. Nor were transcripts provided from the 2005 adjudication for appellant's first violation of a prior court order charge. If such transcripts were unavailable other options were available to appellant in order to supply this Court with a transcript for purposes of review. Specifically, under App.R. 9(C), appellant could have submitted a narrative transcript of the proceedings, subject to objections from appellee and approval from the trial court. Also, under App.R. 9(D), the parties could have submitted an agreed statement of the case in lieu of the record. The record in this matter indicates appellant did not attempt to avail herself of either App.R. 9(C) or 9(D).
 {¶ 66} We further note that appellant was previously charged with violation of a prior court order on October 24, 2005 and plead true to that charge on November 18, 2005. Appellant did not appeal this sentence, which she could have, and challenged the trial court's failure to inform her of the potential punishment for violating the terms of her probation or of any of the court's orders. The filing of a timely notice of appeal is a prerequisite to establishing jurisdiction in a court of appeals. Therefore, while in the *Page 22 
general sense, this court has jurisdiction to hear appeals in juvenile cases, that jurisdiction must be invoked by the timely filing of a notice of appeal. The failure to file a timely notice of appeal is a jurisdictional requirement that cannot be ignored. State v.Alexander, 10th Dist. Nos. 05AP-129, 05AP-245,2005-Ohio-5997 at ¶ 17.
 {¶ 67} Having previously been adjudicated a delinquent for violating a prior court order the appellant was keenly aware that her disregard for the terms of her probation or any court order would result in additional sanctions.
 {¶ 68} Finally we would note that failure of the trial court to notify an offender of the potential prison sentence that may be imposed for a violation of community control sanctions only prohibits the court from sentencing the offender to prison; it does not prohibit the trial court from any other dispositional alternative in response to a defendant's violation of the terms of his or her community control sanctions. In the case at bar, appellant was not remanded to a term of detention in either the juvenile attention center or the Department of Youth Services.
 {¶ 69} Accordingly, appellant's fourth assignment of error is overruled.
 V. {¶ 70} Appellant's argument in her fifth assignment of error that R.C.2152.02 is void for vagueness must also fail. It is not unreasonable to expect persons of ordinary intelligence to realize that disobedience of an order of the court will result in sanctions. As we have noted the State must prove that the individual had actual notice of the court's order, and further that the individual intended to defy the order. Criminal contempt must be proved beyond a reasonable doubt. Brown v.Executive 200, Inc. (1980), 64 Ohio St.2d 250, 416 N.E.2d 610 at syllabus. No where does the record *Page 23 
reflect that appellant ever raised the defense that she did not know about the court's orders or that she was required to abide by the orders. The filing of a timely notice of appeal is a prerequisite to establishing jurisdiction in a court of appeals. Therefore, while in the general sense, this court has jurisdiction to hear appeals in juvenile cases, that jurisdiction must be invoked by the timely filing of a notice of appeal. The failure to file a timely notice of appeal is a jurisdictional requirement that cannot be ignored. State v.Alexander, 10th Dist. Nos. 05AP-129, 05AP-245,2005-Ohio-5997 at ¶ 17.
 {¶ 71} No appeal having been taken by appellant from the original delinquency adjudication and disposition or the prior adjudication for violation of a prior court order, appellant can not now challenge the juvenile court's orders in those respective cases. Boggs v. Boggs
(1997), 118 Ohio App.3d 293, 692 N.E.2d 674.
 {¶ 72} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 73} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 Gwin, P.J., Wise, J., and Delaney, J., concur *Page 24 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant. *Page 1