[Cite as *In re R.J.*, 193 Ohio App.3d 555, 2011-Ohio-2706.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY


IN RE JOHNSON.                                    CASE NO. 1-10-90


                                                  **O P I N I O N**


Appeal from Allen County Common Pleas Court
Juvenile Division
Trial Court No. 2010 JG 27756

Judgment Affirmed

Date of Decision:   June 6, 2011


APPEARANCES:

    Kenneth J. Rexford, for appellant.

    Christina L. Steffan, for appellee.

PRESTON, Judge.

{¶ 1} Delinquent-child-appellant, Ritchie Johnson (hereinafter "R.J."), appeals the judgment of the Allen County Court of Common Pleas, Juvenile Division, ordering that he be committed to the Ohio Department of Youth Services ("DYS"). We affirm.

{¶ 2} On March 31, 2010, a complaint was filed in the Stark County Court of Common Pleas, Family Division, alleging that R.J. appeared to be delinquent by reason of the offense of harassment by an inmate in violation of R.C. 2921.38(A), a fifth-degree felony if committed by an adult. The complaint was assigned Stark County case No. 2010JCR00664. The complaint stemmed from R.J.'s alleged act of throwing urine upon Emily Harding, a corrections officer at the Indian River Detention Facility, as she walked past his detention cell on January 19, 2010.

{¶ 3} On May 25, 2010, an adjudicatory hearing was held before Magistrate Priscilla Cunningham in Stark County, and R.J. was found to be delinquent. After R.J. indicated that he was a resident of Allen County, Magistrate Cunningham indicated upon the record that the case would be transferred to Allen County for disposition.

**{¶ 4}** On June 29, 2010, Magistrate Cunningham issued a decision finding R.J. a juvenile delinquent offender. Under a bullet point entitled "**Other Orders**," the decision reads: "Disposition is certified to Allen County. Stark County Court costs are waived. Clerk: please prepare all necessary documentation to transfer/certify the case to Allen County for disposition." Under a section entitled "Dispositional Summary," the decision reads:

> [R.J.], you are hereby ordered by the court to comply with the following orders:
>
> 1. Appear in and comply with the orders of the Allen County Juvenile Court.
> 2. Other Orders on case 2010JCR00694: DISPOSITION is CERTIFIED TO ALLEN COUNTY. Stark County court costs are waived. CLERK: Please prepare all necessary documentation to transfer/certify the case to Allen County for Disposition.

**{¶ 5}** On June 30, 2010, Judge David E. Stucki approved and adopted the magistrate's decision, noting that "[t]he parties having no objection timely filed herein; this Decision is to have immediate effect."

**{¶ 6}** On July 12, 2010, the Allen County Court of Common Pleas, Juvenile Division, sent an assignment notice to R.J., R.J.'s mother, and the prosecutor, indicating that the matter was assigned Allen County case No. 2010 JG 27756 and was scheduled for a dispositional hearing on August 30, 2010.

{¶ 7} On July 14, 2010, R.J. filed an objection to the magistrate's decision in Stark County alleging that the magistrate's decision was erroneous since his delinquency was not proven beyond a reasonable doubt. A hearing on the objection was scheduled for August 3, 2010, but on July 29, 2010, R.J. filed a motion for a continuance of the hearing.

{¶ 8} On August 27, 2010, R.J. filed a memorandum in support of his objection to the magistrate's decision. On August 30, 2010, a hearing was held in Stark County on the objection, with the parties present, and the objection was withdrawn at that time. The trial court then ordered the clerk "to certify this matter to the Allen County Juvenile Court."

{¶ 9} The record indicates that R.J. and his mother also appeared before the Allen County Juvenile Court for a dispositional hearing on August 30, 2010, and the trial court ordered that disposition be deferred for six months to allow R.J. an opportunity to demonstrate compliance with the law and terms of parole.

{¶ 10} The dispositional hearing was then scheduled for September 22, 2010, in Allen County. On that day, R.J. appeared with counsel, and the trial court ordered that disposition be further deferred and the matter be set for pretrial conference on October 19, 2010.

{¶ 11} On September 29, 2010, R.J. filed a motion in the Allen County Juvenile Court for a hearing and ruling on the objection that was filed in the Stark

County Juvenile Court. On November 15, 2010, the Allen County Juvenile Court overruled the motion. On November 22, 2010, R.J. filed a motion for reconsideration, which the trial court denied.

{¶ 12} On December 16, 2010, a dispositional hearing was held before the Allen County Juvenile Court and the trial court ordered that R.J. be committed to DYS for an indefinite term for a minimum of six months and a maximum period not to exceed his attaining the age of 21 years.

{¶ 13} On December 23, 2010, R.J. filed a notice of appeal. That same day, R.J. filed a motion for a stay pending appeal, which the trial court denied.

{¶ 14} R.J. now appeals, raising four assignments of error for our review. We elect to address R.J.'s third assignment of error out of the order that it was presented in his brief.

## ASSIGNMENT OF ERROR NO. I

The Allen County Juvenile Court violated [R.J.'s] right under the United States Constitution to freedom from being twice in jeopardy and twice punished for the same offense, an act done without jurisdiction to do so.

{¶ 15} In his first assignment of error, R.J. argues that the Allen County Juvenile Court improperly exercised jurisdiction over the case. Because Stark County had already made a disposition in the case, R.J. argues, nothing remained for Stark County to transfer to Allen County, and Allen County's exercise of

jurisdiction and its disposition violated double jeopardy, because he was twice punished for the same offense.

{¶ 16} Although juvenile proceedings are considered civil in nature, juvenile-delinquency proceedings have inherently criminal aspects; therefore, "certain basic constitutional protections afforded adults, for example the right to counsel, the privilege against self-incrimination, and freedom from double jeopardy, are applicable to juvenile proceedings." *In re Gillespie*, 150 Ohio App.3d 502, 2002-Ohio-7025, 782 N.E.2d 140, ¶ 20, citing *Schall v. Martin* (1984), 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207. See also *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 23-24, citing *Breed v. Jones* (1975), 421 U.S. 519, 528-529, 95 S.Ct. 1779, 44 L.Ed.2d 346.

{¶ 17} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb." The bar against double jeopardy is applicable to the states through the Fourteenth Amendment to the United States Constitution. See, e.g., *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. Article I, Section 10 of the Ohio Constitution also affords protection against double jeopardy for criminal defendants.

{¶ 18} "The primary purpose for the prohibition against double jeopardy 'is to preserve the finality or integrity of judgments.'" *In re C.B.*, 2d Dist. No. 23615,

2010-Ohio-2129, ¶ 33, quoting *In re Kelly* (Nov. 7, 1995), 10th Dist. No. 95-APF05-613, citing *United States v. DiFrancesco* (1980), 449 U.S. 117, 128, 101 S.Ct. 426, 66 L.Ed.2d 328. Therefore, any "[a]pplication of the Double Jeopardy Clause depends upon the legitimacy of a defendant's expectation of finality in the judgment." Id., quoting *In re Burt*, 5th Dist. No. 2006-CA-00328, 2007-Ohio-4034, ¶ 61, citing *Kelly* and *DiFrancesco*.

{¶ 19} The facts in this case are similar to those presented to this court in *In re C.E.*, 190 Ohio App.3d 85, 2010-Ohio-4072, 940 N.E.2d 990. In that case, C.E. was charged on December 31, 2008, and March 3, 2009, in the Stark County Court of Common Pleas, Family Court, Juvenile Division, with a total of four counts of delinquency for assaulting DYS employees, fifth-degree felonies if committed by an adult (case Nos. 2008 JCR 03660 and 2009 JCR 00532). Id. at ¶ 2. On March 5, 2009, C.E. admitted each count of delinquency, and the Stark County Family Court waived costs, ordered that C.E. be released to the custody of DYS, and certified the disposition of both cases to the Paulding County Juvenile Court, C.E.'s county of residence. Id. at ¶ 3. In addition to the foregoing, the magistrate's decisions included the following language under a portion of the decision entitled, "Dispositional Summary":

> You are hereby ordered by the court to comply with the following orders:
> * * *

2. You are now subject to Community Control by the Family Court subject to the following conditions:

* Cooperate with the process necessary to provide a genetic DNA sample.

Id. The magistrate's decisions were approved and adopted by the judge on March 9, 2009. Id.

{¶ 20} The cases were then certified to the Paulding County Juvenile Court, where they were consolidated into one case (case No. 20092020) and scheduled for a June 29, 2009 dispositional hearing. Id. at ¶ 4. The court ordered that C.E. be committed to DYS on each count for a minimum period of six months to a maximum period not to exceed his attaining age 21 and further ordered that these periods of commitment run consecutively to one another for an aggregate minimum of two years to a maximum period not to exceed his attaining age 21. The court also ordered that C.E. be held in detention for 90 days. However, the court suspended both the commitments to DYS and the 90-day detention and placed C.E. on community control. Id.

{¶ 21} On September 8, 2009, a motion to revoke C.E.'s community control was filed, alleging that C.E. had violated the terms of his community control because he slashed the tires of a vehicle belonging to another person, which constituted a violation of the law. Id. at ¶ 5. A hearing was held on this motion on September 15, 2009, wherein C.E. admitted violating the terms of his

community control. Id.  The court then revoked C.E.'s community control and ordered that he be committed to DYS on two of his counts of delinquency for a minimum period of six months to a maximum until age 21 on each count and that these periods of commitment run consecutively to one another for an aggregate minimum of one year to a maximum period not to exceed his attaining age 21. Id. Thereafter C.E. filed a notice of appeal with this court.

{¶ 22} On appeal, C.E. argued that the trial court had erred by imposing a second disposition in the case, because the Stark County Family Court had already imposed a disposition of community control. Id. at ¶ 7.  C.E. further argued that nothing remained for the Stark County Family Court to certify to Paulding County, because it had already entered its disposition. Id.  This court agreed with C.E. that the Stark County Family Court had entered a final disposition of community control, which is one of the dispositional orders that a court may make under R.C. 2152.19, and therefore Paulding County Court of Common Pleas, Juvenile Division, was without authority to issue a second disposition in the case. Id. at ¶ 11-12.

{¶ 23} The magistrate in this case, however, did not make a dispositional order under R.C. 2152.19, as the magistrate in *In re C.E.* had done.  The magistrate sub judice simply ordered that R.J. "[a]ppear in and comply with the orders of the Allen County Juvenile Court."  R.J. argues that this was an order that

he abide by the terms set in Allen County that were previously imposed in his old case, the cause of his detention in Stark County. We do not read the magistrate's order that way; rather, we interpret this order to be an interim order to effectuate the transfer of disposition. Notably, unlike the community control imposed in *In re C.E.*, R.C. 2152.19 does not provide for the type of order made by the magistrate herein as a dispositional order. Therefore, we find the facts of this case distinguishable from *In re C.E.*, because the trial court did not make an order of disposition pursuant to R.C. 2152.19.

{¶ 24} R.J. further argues that the Stark County trial court judge intended to make an order of disposition, because the trial court's entry indicated that the judgment was a final, appealable order, and a final, appealable order in a delinquency case requires a disposition. The trial court's subjective "intention" or mere designation of "final, appealable order" is irrelevant, though, in determining whether, in fact, an order is final. *Summit Petroleum, Inc. v. K.S.T. Oil & Gas Co., Inc.* (1990), 69 Ohio App.3d 468, 470, 590 N.E.2d 1337 ("A trial court cannot transform that which is not, by its nature, a final appealable order, into the same by mere appellation"). This argument is, therefore, without merit.

{¶ 25} Finally, R.J. argues that the Stark County magistrate's decision to waive court costs is a further indication that the magistrate entered a disposition. This argument lacks merit as well. The fact that the magistrate waived court costs

-10-

indicates just the opposite—that the magistrate was not rendering disposition and was transferring disposition to Allen County—because the Stark County magistrate could have required R.J. to pay costs as a disposition "in addition to any other disposition authorized or required by [R.C. Chapter 2152]." R.C. 2152.20(A)(2). In fact, the Allen County Juvenile Court did impose costs as part of its disposition in this case.

{¶ 26} Because the Stark County Juvenile Court did not issue a dispositional order in this case, R.J. was not twice placed in jeopardy for the same offense. and the Allen County Juvenile Court had the authority to impose disposition. We further note that the application of double-jeopardy protection would be inappropriate in this case, because R.J. did not have a legitimate expectation of finality in the Stark County Juvenile Court's judgment. *In re C.B.*, 2010-Ohio-2129, at ¶ 33, quoting *In re Burt*, 2007-Ohio-4034, at ¶ 61, citing *Kelly* and *DiFrancesco*, 449 U.S. 117. R.J. was told at the adjudicatory hearing and in the magistrate's decision that the case was being transferred to Allen County, and this was not R.J.'s first encounter with the juvenile court system.

{¶ 27} For all these reasons, R.J.'s first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. III

[R.J.] was denied due process of law, a right assured to him by both the Ohio Constitution and the United States Constitution, when he was denied an opportunity to be heard on his objections to

magistrate's decision and when two courts exercised simultaneous jurisdiction over the same controversy on the same date.

{¶ 28} In his third assignment of error, R.J. argues that he was denied due process of law when the Stark County Family Court did not provide a hearing on his objections. R.J. argues that the Stark County Family Court improperly and incorrectly ruled that R.J. and his parents were present for the scheduled hearing (which R.J. claims is not true, since they were in Allen County for a scheduled hearing) and that the objections were withdrawn (which he also claims is not true). R.J. further argues that the Allen County Juvenile Court violated his due process rights by failing to rule upon the objections that were properly filed in the case.

{¶ 29} The procedural history in this case is important. As noted above, the magistrate issued her decision on June 29, 2010, and the trial court adopted and approved this decision just one day later, noting that "[t]he parties having no objection timely filed herein; this Decision is to have immediate effect." "The court may enter a judgment * * * during the fourteen days permitted by Juv.R. 40(D)(3)(b)(i) for the filing of objections to a magistrate's decision * * *"; however, "the timely filing of objections to the magistrate's decision * * * operate[s] as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered." Juv.R. 40(D)(4)(e)(i). Accordingly, R.J.'s objections, filed

July 14, 2010, in Stark County, stayed the trial court's June 30, 2010 judgment, ordering that disposition be transferred to Allen County, until the trial court ruled upon the objections. Id. On August 30, 2010, the objections were withdrawn, rendering the trial court's June 30, 2010 judgment final; therefore, jurisdiction of the case was immediately vested in the Allen County Juvenile Court on August 30, 2010. *In re Talbert*, 5th Dist. No. CT2008-0031, 2009-Ohio-4237, ¶ 20 (trial court's order was stayed under Juv.R. 40(D)(4)(e)(i) as a result of timely objections to the magistrate's decision being filed; and therefore, trial court's order could not become a final, appealable order until the trial court explicitly disposed of the objections); *In re N.C.*, 2d Dist. No. 09CA0023, 2009-Ohio-4603, ¶ 16 (same); *In re M.H.*, 9th Dist. No. 08CA0040, 2009-Ohio-669, ¶ 8-10 (same). Therefore, the Allen County Juvenile Court properly exercised jurisdiction over the case on August 30, 2010, for purposes of its dispositional hearing. Because R.J. had withdrawn his objections, no objections remained for the Allen County Juvenile Court to rule upon. The only remaining issue for the Allen County Juvenile Court was disposition.[1]

{¶ 30} Notwithstanding the record, R.J. argues that the Stark County Juvenile Court did not provide him with a hearing on his objections. R.J. also

---

[1] We note that the procedural complications that arose in this case could have been avoided had the Stark County Juvenile Court simply waited 14 days before approving and adopting the magistrate's decision to allow for timely objections pursuant to Juv.R. 40(D)(3)(b)(i).

-13-

argues that the Stark County Juvenile Court's judgment entry inaccurately reflects that his parents and he were present at the hearing, when they were not, and the judgment entry inaccurately reflects that the objections were withdrawn, when they actually were overruled. For purposes of a direct appeal, however, this court is limited to reviewing the record provided under App.R. 9. App.R. 12(A)(1)(b). The record in this case demonstrates that a hearing was held on R.J.'s objections, and the objections were withdrawn. Furthermore, we must presume regularity of the proceedings and that the trial court's judgment entries accurately reflect what occurred at the hearing since no transcript of the hearing was filed. *In re S.L.*, 3d Dist. Nos. 4-10-09 and 4-10-10, 2010-Ohio-6380, ¶ 64.

{¶ 31} Because the record fails to demonstrate error, we overrule R.J.'s third assignment of error.

## ASSIGNMENT OF ERROR NO. II

Stark County erred in adjudicating [R.J.] a delinquent child, as the state did not meet its burden of proof beyond a reasonable doubt.

{¶ 32} In his second assignment of error, R.J. argues that the trial court's adjudication of delinquency was not supported by sufficient evidence.

{¶ 33} As an initial matter, we note that R.J. failed to object to the magistrate's decision, because he withdrew his objections; therefore, he has

waived all but plain error with respect to his sufficiency argument. Juv.R. 40(D)(3)(b)(iv). That being said, a conviction based upon insufficient evidence almost always results in plain error since it constitutes a denial of due process of law. *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 13, citing *State v. Coe*, 153 Ohio App.3d 44, 2003-Ohio-2732, 790 N.E.2d 1222, ¶ 19, quoting *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541.

{¶ 34} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶ 35} R.J. was adjudicated a delinquent child for harassment by an inmate in violation of R.C. 2921.38(A), which provides:

No person who is confined in a detention facility, with intent to harass, annoy, threaten, or alarm another person, shall cause or attempt to cause the other person to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the other person, by expelling the bodily substance upon the other person, or in any other manner.

Emily Harding testified that on January 19, 2010, she was employed as a juvenile correctional officer at the Indian River facility in Massillon, Stark County, Ohio. Harding testified as follows:

I was walking down the hall to do a hall check and got urine thrown on me out through the crack of the door, and when I looked in and [asked] which one had done it * * * he said ["]I did bitch["] and then laughed and him and his roommate were laughing about it [and] I went and reported it and did my necessary paperwork.

Harding testified that she knew R.J. was the one who threw the urine "[c]ause he's the one who said he had done it." Harding testified that she knew the liquid was urine by its smell. Harding further testified that she felt "harassed and taken advantage of" by R.J.'s actions. Upon cross-examination, Harding testified that she was not facing R.J. when she was hit with the liquid and that the liquid had hit her on her right side. She further testified that another juvenile was in the cell with R.J. at the time, but she did not remember the identity of that juvenile. Harding testified that she had asked both juveniles who had done it and that R.J. had said, "I did it bitch." Harding could not recall whether or not she had been spit upon that same night.

{¶ 36} Trooper Thomas W. Lemmon testified that he is assigned to investigate incidents that occur inside the Indian River facility and that he had discussed the incident with R.J. Trooper Lemmon testified that R.J. had told him that the liquid was water and that his roommate had thrown the water. Trooper Lemmon testified that he had not believed R.J., had not had any further discussions with R.J., and thereafter had submitted his report to the prosecutor's office.

{¶ 37} R.J. testified that his roommate at the facility that night was Deangelo Smith. R.J. testified as follows:

> [The night of the incident] was [Smith's] last night and me and him were both clowning[.] * * * [T]he whole unit was clowning like every night doing other stuff. [Mrs. Harding] was * * * doing her door log for seclusion and we was having fun. [Smith] was in the room splashing with me like with * * * we're from the same City * * * he is from Lima and I am from Lima. He was splashing me * * * I'm gonna miss you man and all that stuff. I guess it went through the crack cause I was kind of curled up * * * I guess some got through the crack of the door.

R.J. testified that Smith had been splashing him with water from the water bottle they had in their room. R.J. testified that Smith and he had played around all the time. R.J. testified that after Harding was splashed, she "said oh my God you nasty mother fucker two nasty mother fuckers she was talking about both of us and she walked away. And then later on that night I then got a [write] up saying that I

threw piss on a staff." R.J. testified that he had not been removed from his room and that he had stayed with Smith until the next morning, when Smith went home.

{¶ 38} Thereafter, the trial court found R.J. delinquent based upon his violation of R.C. 2921.38(A). Viewing the evidence in a light most favorable to the state, we conclude that a rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt. The evidence presented demonstrated that R.J. threw urine upon Harding while he was confined in a detention facility with the purpose to harass, annoy, threaten, or alarm Harding. Harding testified that she knew the liquid R.J. threw on her was urine from its smell. R.J.'s intent to act with the aforementioned purposes may be inferred from the circumstances surrounding the event, particularly R.J.'s response to Harding's accusation: "I did it bitch." It can further be inferred that Harding was in fact alarmed by R.J.'s act in light of her initial vulgar response, as previously mentioned. Harding testified that she felt "harassed and taken advantage of" by R.J.'s actions. Based upon the foregoing, we conclude that the state presented sufficient evidence to sustain the trial court's delinquency finding.

{¶ 39} R.J.'s second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. IV

[R.J.] was denied the effective assistance of counsel when Stark County appointed counsel did not object to a custodial interrogation of her client and filed objections to the magistrate's decision in the

Stark County Family Court after certification of the case to Allen County and/or withdrew the objections; alternatively, the certification of the case by the Stark County Juvenile Court was improper.

{¶ 40} In his fourth assignment of error, R.J. argues that trial counsel was ineffective for failing to file a motion to suppress statements he made to Harding without first being Mirandized. Next, R.J. argues that trial counsel was ineffective for filing objections in Stark County if those objections should have been filed in Allen County. Alternatively, R.J. argues that his trial counsel was ineffective for withdrawing the objections in Stark County if properly filed therein. Finally, R.J. argues that Stark County's certification to Allen County was improper.

{¶ 41} A defendant asserting a claim of ineffective assistance of counsel must establish that (1) the counsel's performance was deficient or unreasonable under the circumstances and (2) the deficient performance prejudiced the defendant. *State v. Kole* (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, citing *Strickland*, 466 U.S. at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142; *Strickland* at 694.

{¶ 42} The "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305, cited in *State v. Madrigal* (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52. To constitute ineffective assistance, there must also be a reasonable probability that the motion would have been successful. *State v. Pierce*, 3d Dist. No. 11-09-05, 2010-Ohio-478, ¶ 34, citing *State v. Robinson* (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077, and *State v. Ligon* (June 18, 2001), 3d Dist. No. 4-2000-25.

{¶ 43} R.J. first argues that trial counsel was ineffective for failing to file a motion to suppress statements he had made to Harding while in custody when he had not been Mirandized. This argument lacks merit. *Miranda* warnings were not necessary here because Harding was conducting an on-the-scene investigation of a crime that R.J. was suspected of committing while in the detention facility, *and* "the circumstances of the interrogation [did not] create a change in [R.J.'s] surroundings * * * that result[ed] in an added imposition on [R.J.'s] freedom of movement." See, e.g., *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 16. The record demonstrates that in response to getting splashed with urine, Harding stated, "Who did it?" and R.J. stated "I did it bitch." At the time of Harding's question, she did not know whether R.J. or his roommate had thrown the urine. Furthermore, R.J. and his roommate were both still inside

their same room, with no further restraint upon their freedom. Because *Miranda* warnings were unnecessary prior to Harding's on-the-scene questioning of the juveniles, trial counsel was not ineffective for not filing a motion to suppress R.J.'s statement to Harding based upon the lack of *Miranda* warnings, as R.J. argues.

{¶ 44} Next, R.J. argues that trial counsel was ineffective for filing objections in Stark County if the objections should have been filed in Allen County. We find no error in trial counsel's filing objections to the magistrate's decision in Stark County. As we noted above, trial counsel's filing of timely objections in Stark County stayed the Stark County Juvenile Court's judgment transferring the case to Allen County until the trial court ruled upon the objections. Juv.R. 40(D)(4)(e)(i). Furthermore, Stark County was the proper forum for filing the objections because the magistrate served in that county under the authority of the Stark County Juvenile Court. Furthermore, R.J. raised a sufficiency-of-the-evidence objection, and therefore, nothing would have remained to transfer to Allen County had the trial court agreed with R.J. and sustained the objection. Under these circumstances, we do not find that trial counsel was ineffective for filing the objections in Stark County.

{¶ 45} Alternatively, R.J. argues that his trial counsel was ineffective for withdrawing the objections in Stark County if they had been properly filed therein.

-21-

We disagree. Even assuming that trial counsel was deficient for withdrawing the objections — which we cannot definitely conclude, since no transcript of the proceedings was filed for appeal purposes—we cannot conclude that R.J. was prejudiced by this decision. Because we have already concluded that the state presented sufficient evidence to establish R.J.'s delinquency, we are not persuaded that the trial court would have sustained the objections had they not been withdrawn, or, in other words, that the result of the proceeding would have been different. Therefore, we cannot find that R.J. was denied effective assistance of counsel on this basis.

{¶ 46} In the final sentence of his brief, R.J. argues that Stark County's certification to Allen County was improper. As we already mentioned, the juvenile court's adoption of the magistrate's decision without waiting for Juv.R. 40(D)(3)(b)(i)'s 14-day objection period may have been ill-advised; nevertheless, the trial court was within its authority under R.C. 2151.271 and Juv.R. 11 to transfer the case to Allen County following adjudication. Therefore, this argument lacks merit.

{¶ 47} For all the aforementioned reasons, R.J.'s fourth assignment of error is overruled.

{¶ 48} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW and WILLAMOWSKI, JJ., concur.